UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DONNA TOMASINO and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> THE ESTEE LAUDER COMPANIES INC., and ESTEE LABORATORIES, LLC, <br><br> Defendants. | Civil Action No._____ <br><br><br> **CLASS ACTION COMPLAINT and** <br> **DEMAND FOR JURY TRIAL** |

Plaintiff, by her attorneys, on behalf of herself and all others similarly situated, makes the following allegations based on the investigation of counsel and based upon information and belief, except as to allegations specifically pertaining to herself and her counsel, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Defendant, The Estee Lauder Companies Inc. (together with Defendant Estee Laboratories, LLC, "Estee Lauder" or "Defendants") is a self-proclaimed "pioneer in the cosmetics industry" with more than $9.7 billion in annual sales.  More than 43 percent of those sales are generated by Estee Lauder's skin care products, which constitutes its "most profitable product category."

2.     Estee Lauder enjoys such significant sales, in part because of its false, deceptive or misleading representations that products from its Advanced Night Repair ("ANR") Collection, specifically Advanced Night Repair Synchronized

Recovery Complex, Advanced Night Repair Synchronized Recovery Complex II, Advanced Night Repair Eye Synchronized Complex, Advanced Night Repair Concentrate Recovery Boosting Treatment, and Advanced Night Repair Eye Serum Infusion (collectively, "ANR Products") have certain age-negating effects on the human skin.

3.    Estee Lauder's primary marketing message for the ANR Products focuses on "groundbreaking DNA research into 'clock genes,'" which purportedly led to the discovery of "Chronolux Technology," represented to be an "advanced recovery complex" which is said to help the skin "continuously repair the appearance of past damage," while also "building a rich reserve of anti-oxidants and lipids" to help "replenish skin's natural protectants."  According to Estee Lauder's marketing, the ANR Products are "[i]nspired by 30 years of groundbreaking DNA research, Estee Lauder brings you the most comprehensive, high-performance anti-aging formulas we have ever created.  Think of them as 'insurance' for younger, healthier-looking skin.  Today and tomorrow."  Estee Lauder also claims that the ANR Products can repair DNA damage.

4.    Estee Lauder supports its efficacy promises for the ANR Products with misleading references to in-vitro testing, patents, clinical tests, and lengthy genetic research and study.

5.    Defendants' marketing strategy promoting the efficacy of the ANR Products has been developed to be uniform across the entire product line and echoes across all forms of ANR Product marketing and advertising.  That is, regardless of

whether the advertising for the ANR Products appears in print (magazine or newspaper), on Estee Lauder's website, on third-party retailer websites, on product brochures, product displays, and product packaging at the point of sale, Estee Lauder repeats substantially the same thematic marketing message and efficacy claims for the ANR Products.

6. In addition to making uniform efficacy claims, Estee Lauder's ANR marketing strategy is also designed to create a uniform look and theme for all of its ANR Products. For example, Estee Lauder uses the same images and graphics (*e.g.,* the image of a DNA helix) and color scheme across all of its product advertising and packaging and rarely differentiates between products in its advertising materials, frequently referring just to "Advanced Night Repair." The ANR marketing campaign also frequently includes more than one ANR Product in the advertisements and Estee Lauder presents all the ANR Products as providing the same DNA-based efficacy.

7. Estee Lauder's public filings, such as its 2012 10-K, reaffirm this uniform marketing strategy, by admitting that each of its product lines, including ANR, "has a single global image, and is promoted with consistent logos, packaging and advertising designed to enhance its image and differentiate it from other brands."

8. As explained more fully herein, Estee Lauder has made, and continues to make, deceptive, false or misleading claims and promises to consumers about the efficacy of its ANR Products in a pervasive, nation-wide marketing scheme that

confuses and misleads consumers about the true nature of the ANR Products.  In reality, the ANR Products do not and cannot live up to the efficacy claims made by Estee Lauder because none of their ingredients can provide the promised results.

9.     Estee Lauder knows this, yet designs its marketing and advertising campaign for the ANR Products to include indicia of scientific research and discovery and promises of specific results for the sole purpose of misleading and deceiving consumers.   In sum, Estee Lauder dupes consumers with false and misleading promises of product results based on purported scientific discoveries that it knows it cannot deliver.   Estee Lauder does so with one goal in mind – reaping enormous profits at the expense of consumers.

10.     Indeed, the reason consumers purchase the ANR Products is to obtain the unique results that Estee Lauder promises for its ANR Products.

11.     Despite these promises of scientific research and discovery, Estee Lauder's financial reports reveal a very different story and illustrate that the company commits an overwhelming amount of its resources to marketing. According to its public filings, in 2012, Estee Lauder spent more than $2.65 *billion* on marketing while it only spent $96.5 million on research and development – a ratio of more than twenty-seven to one.

12.     A direct effect of Estee Lauder's pervasive and deceptive marketing campaign is that consumers across the country, including Plaintiff and the other members of the proposed Class and the NY Subclass, suffered financial harm due to Estee Lauder's false, deceptive or misleading misrepresentations because they

purchased skin-care products that do not, and cannot, provide the results Estee Lauder promises.

13.    Estee Lauder sells the ANR Products to consumers in a different manner than less expensive wrinkle creams or moisturizers are sold, which affects the manner in which Plaintiff and the other members of the Class and NY Subclass are exposed to the false or deceptive claims.

14.    While lower-priced cosmetic products are available on the shelves of drug stores and supermarkets, the ANR Products are sold mainly over counters at high-end department stores or online on Estee Lauder's website.  Sales persons who are specifically trained by Estee Lauder to sell its ANR Products staff the counters at retail department stores, where Estee Lauder also provides consumers access to product displays and sales brochures that regurgitate the same efficacy promises made in other forms of advertising.

15.    Accordingly, instead of making a side-by-side comparison of product packaging on store shelves, consumers of the ANR Products decide to purchase these products almost exclusively by virtue of marketing campaigns that reach consumers before they enter the retail outlets (*i.e.*, print media advertisements, television commercials or Internet marketing) and through the counter sales and advertising displays, such as those pictured below:



16.     Indeed, Estee Lauder specifically mentions in its public filings, such as its 2012 10-K, that its "in-store displays are designed to attract new customers and introduce existing customers to different products in the line."

17.     Plaintiff and the other members of the Class and NY Subclass were exposed to Estee Lauder's pervasive deceptive and misleading advertising messages and material omissions regarding the efficacy promises of the ANR Products.

18.     Plaintiff seeks relief in this action individually and on behalf of all purchasers in the United States of at least one of the ANR Products ("the Class") at any time from the date of product launch for each of the particular ANR Products to the present (the "Class Period") for unjust enrichment, breach of express warranty and breach of implied warranty.  Plaintiff also seeks relief individually and on behalf of a subclass of residents of her home state of New York (the "NY Subclass") for violation of New York General Business Laws §§ 349, 350.  Pending completion of discovery, Plaintiff may seek leave to amend the definitions of the Class and/or NY Subclass and/or to add additional subclasses.

## THE PARTIES

19.     Plaintiff Donna Tomasino is a citizen of the State of New York, residing in Richmond County. Plaintiff purchased Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex from a Macy's department store on Staten Island, New York at full retail cost[1] during the Class Period, for personal use.  In or about 2010, Plaintiff saw, read, and received Estee Lauder's material misrepresentations as described more fully herein, including Estee Lauder's false and misleading product claims regarding DNA repair and other age-negating benefits, and relied on those material misstatements in making her decision to purchase the ANR Products.  Plaintiff would not have purchased Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex had Estee Lauder not made such false and deceptive claims and instead disclosed the true nature of its products.

20.     Plaintiff, in reliance upon the efficacy claims identified herein and as made by Estee Lauder in magazine advertisements, including those appearing in Elle, Vogue, Town & Country and Harper's Bazaar, among others, purchased Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex.

---

[1] The prices Estee Lauder charges for its ANR Products are as follows: Synchronized Recovery Complex, $62 for 1 oz; Synchronized Recovery Complex II, $62 for 1 oz; Eye Synchronized Complex, $55 for 0.5 oz; Eye Serum Infusion, $62 for 15 ml; Concentrate Recovery Boosting Treatment, $95 for 1 oz.

21.     Plaintiff also saw, read and relied on these same product efficacy statements at the point of sale, including Defendants' DNA claims and the graphical representations showing the results of a clinical study, in making her decision to purchase Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex in or about 2010 at Macy's.  The efficacy statements relied on by Plaintiff included, for example, the purported "scientific" benefits based on "in vitro testing," patents, and new technologies like "Chronolux Technology" and "AGT Repair Technology," and claims that the ANR Products would "repair past visible DNA damage" and "neutralize[] up to 90% of environmentally generated free radicals (in vitro testing) before they can affect skin's appearance."

22.     These false and misleading statements received by Plaintiff in or about 2010 were material and influenced her decision to purchase ANR Products.

23.     Defendant, The Estee Lauder Companies Inc., is a Delaware corporation with its principal place of business in New York, New York.

24.     Defendant Estee Laboratories, LLC is a Delaware limited liability company.  Upon information and belief, Estee Laboratories LLC is a wholly owned subsidiary of The Estee Lauder Companies Inc.

## JURISDICTION AND VENUE

25.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)  because there are more than 100 class members and the aggregate amount

in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

26.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because Defendants conduct business in this District and a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**Estee Lauder's Misleading Efficacy Claims for ANR Products**

27.     Estee Lauder's marketing materials claim that the ANR Products are "[i]nspired by the science of clock genes, exclusive Chronolux and AGT Repair Technologies support the natural synchronization of skin's repair processes so that it repairs itself at exactly the right time."

28.     Estee Lauder similarly claims throughout its marketing materials that ANR Products are formulated based on DNA research, explains to consumers its "DNA Science In Depth," and conveys the misleading message that ANR Products can "repair DNA damage":





29.     The product inserts for the ANR Products, which are included in the

packaging materials, parrot these same DNA repair claims:

> Working extensively with a leading independent research team, Estee
> Lauder scientists are among the first to understand the importance of a
> specific group of genes known as "clock genes." This pivotal research showed
> that "clock genes" regulate a series of precisely timed repair responses within
> each skin cell to help maximize its DNA repair.

30.     Estee Lauder's references to genetic research, skin cell behavior and

DNA repair unambiguously convey the misleading message to consumers that using

the ANR Products will repair damage to their skin cells and/or repair their DNA.

In fact, the ANR Products cannot provide the promised efficacy results.

31.     In its marketing materials for the ANR Products, Estee Lauder also

provides "Learn How it Works" information, where consumers learn of the

purported "technology" that enables the ANR Products to provide the promised results. For example, as Estee Lauder describes on its website:

> Our exclusive Chronolux™ Technology supports the natural synchronization of skin's repair and protection processes. Repairs the appearance of past damage and addresses the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent. Helps prevent future damage.

32.     Estee Lauder goes so far as to promise that the ANR Products will "[r]epair the appearance of past damage and address the damaging effects of environmental assaults before they become permanent."

33.     Estee Lauder compounds this deception with its persistent use of scientific terms and phrases. In fact, Estee Lauder routinely uses such phrases as "advanced technologies," "in vitro test," "patents," "DNA research," "DNA science in depth," "clinical improvement," "clinical study," and others, in order to convince consumers that its ANR Products contain unique ingredients which have been scientifically tested to provide the promised results. Such claims are further reinforced by Estee Lauder's "A Word About Quality" promises.

34.     The product inserts for each of the ANR Products further reinforce the efficacy claims and corresponding scientific references made by Estee Lauder with the promise that "overall efficacy" is supported by "stringent evaluation":

> A Word about Quality – Every Estee Lauder formula has undergone stringent evaluation for ingredient integrity, non-irritancy and *overall efficacy*. At Estee Lauder, our promise is to provide you with the very best in research, technology and quality.

(Emphasis added.)

35.     Estee Lauder also highlights its purported discovery of new ingredients and technologies which it claims not only make its products unique, but also which support its efficacy claims, such as its "exclusive Chronolux™ Technology."

36.     In fact, while the use of such seemingly scientific terms and claims of ingredient discovery provide the ANR Products with an increased level of credibility among unsuspecting consumers, and therefore increased sales, the purported scientific-sounding claims are simply part and parcel of Estee Lauder's deceptive and misleading advertising campaign.

37.     Indeed, the clinical studies and other data that Estee Lauder represents as supportive of the claimed efficacy results are nothing more than a continuation of Defendants' misleading practices – each of the studies is designed to be used in the marketing materials to support the claimed efficacy and Defendants know that consumers will not see the results these studies purportedly represent.

**Misleading Use of Statistics**

38.     Another way Estee Lauder deceives consumers in its marketing of the ANR Products is by its misleading use of statistics.  For example, Estee Lauder presents the "results" of a purported "clinical study" that it claims "proves skin gets better and better" in the following manner on the "See The Proof" section of its website for ANR (and in its ANR product brochures available at the point of sale):



39.     This graph purportedly illustrates the "results" of the "clinical study" of ANR, wherein participants in the study saw a "68% Improvement" in "Lines and Wrinkles" after twelve months of using ANR (there is no indication of which specific ANR Product(s) was used in the "clinical study").

40.     Estee Lauder's use of asterisks does nothing to diminish this specific efficacy claim of purported "68% Improvement" through ANR use.  The first, single asterisk refers to "Clinical improvement over baseline." There is no information of what is meant by "clinical improvement" or what the "baseline" is.  The second, double asterisk, which appears twice in the graphical presentation and purportedly provides different information than the single asterisk, claims that the "improvement" is the "Clinical improvement of women using Advanced Night Repair compared to control panel of women, after twelve months."[2]  There is no

_____

[2] It does not appear that Estee Lauder knows what the results of its own "unprecedented" "clinical study" actually show, as one of its brochures indicates

explanation for the difference between the "baseline" and the "control panel of women" or any other information that would assist consumers in assessing the credibility of the 68% improvement claim.

41.     Accordingly, the claims made by this statistical presentation of the results of the "clinical study" is that consumers using ANR for twelve months can expect to see a "68%" reduction in their "Lines & Wrinkles."

42.      Because nothing in the ANR Products can reduce lines and wrinkles by 68%, this specific efficacy claim is deceptive or misleading.

43.     Estee Lauder further claims that Advanced Night Repair is protected by "20+ Patents Worldwide" and then invites consumers to "See the Proof."

44.     The "See the Proof" section on both its website and its printed marketing materials, which are on display at the point of sale, provides a series of illustrations that purportedly "proves" that ANR Products perform as promised using the same deceptive statistical data:

---

that the "68% improvement" is in the "look" of lines and wrinkles as opposed to a reduction in the lines and wrinkles themselves as reflected in other marketing materials, including on the Estee Lauder website.







45.     These graphical representations not only contain specific efficacy claims as to the results provided by using the ANR Products, but also claim that the improvements will get "better and better" the longer the products are used.   Estee Lauder uses the "better and better" promise to sway consumers into continued purchases of the ANR Products, despite the fact that Estee Lauder knows the results will never materialize.

**<u>Misleading Use of Patent Claims</u>**

46.     In addition to the false, deceptive or misleading efficacy claims, Estee Lauder misleads and deceives customers by its claim the ANR Products are patented products.

47.     Despite Estee Lauder's claim of patent protection and use of "U.S. Patented" language in its advertising, product descriptions, and product packaging,

the insert for the ANR Products which consumers receive only after purchasing the product notes that the purported patents are "Worldwide" without any further information or actual U.S. patent numbers.

48.     Accordingly, in addition to being deceptive or misleading, the use of the word "patent" by Estee Lauder in its advertising materials also constitutes false marketing under U.S. patent law.  According to 35 U.S.C. § 292(a):

> (a)     Whoever, without the consent of the patentee, marks upon, or affixes to, or uses in advertising in connection with anything made, used, offered for sale, or sold by such person within the United States, or imported by the person into the United States, the name or any imitation of the name of the patentee, the patent number, or the words "patent," "patentee," or the like, with the intent of counterfeiting or imitating the mark of the patentee, or of deceiving the public and inducing them to believe that the thing was made, offered for sale, sold, or imported into the United States by or with the consent of the patentee; or **Whoever marks upon, or affixes to, or uses in advertising in connection with any unpatented article the word "patent" or any word or number importing the same is patented, for the purpose of deceiving the public**; or Whoever marks upon, or affixes to, or uses in advertising in connection with any article the words "patent applied for," "patent pending," or any word importing that an application for patent has been made, when no application for patent has been made, or if made, is not pending, for the purpose of deceiving the public - Shall be fined not more than $500 for every such offense. (Emphasis added).

49.     Indeed, upon information and belief, none of the ANR Products identify U.S. patent numbers anywhere on the products or the product packaging.  In order to properly protect a patented product or ingredient, such information or "marking" is essential to put others on notice of what patents Estee Lauder is specifically protecting.  Accordingly, Estee Lauder's failure to include such information illustrates that the reason for including the patent labels and marks is purely a

marketing ploy aimed at consumers, and is not intended to actually protect any patented formulation, discovery or ingredient.

**The Effects of Defendants' Use of Scientific Data and Discovery**

50.   Making specific efficacy promises based upon "scientific" data and discovery further demonstrates that Defendants' claims are *not* mere puffery. Indeed, if the ANR Products actually repaired DNA damage, reduced lines and wrinkles by 68%, or provided the other age-negating effects Defendants represent that those products have, they would trigger regulation as a drug.

51.   Estee Lauder relies on promises of specific results purportedly supported by the indicia of scientific reliability and discovery (*e.g.*, patents, tests, and DNA discoveries) because it knows that such science-oriented promises and support for its efficacy claims render consumers more likely to believe the efficacy promises, and therefore more likely to purchase the high-priced ANR Products.

52.   Even if one or more of Estee Lauder's claims is literally true, when viewed in their totality, the promises made by Estee Lauder regarding the efficacy of the ANR Products are nevertheless misleading to the average consumer and are therefore actionable regardless of their literal truthfulness.

53.   In addition, regardless of whether the actual "clinical" studies or other tests referenced by Estee Lauder produced the claimed results, the references to such "clinical" studies or tests as being indicative of results for consumers generally in actual use of the ANR Products is misleading and deceptive.  Indeed, this "data"

is part and parcel of Estee Lauder's false, misleading, and/or deceptive advertising for its ANR Products.

54.     For example, Estee Lauder claims that Advanced Night Repair Synchronized Recovery Complex "helps neutralize up to 90%* of environmentally-generated free radicals before they can damage skin's appearance."  The asterisk refers to an "in-vitro" test.  "In-vitro" is Latin for "in glass" and it refers to results that are based on ingredient testing in a test tube or petri dish, which means that the ingredients' ability to penetrate actual human skin cannot be assessed.  Estee Lauder is well aware of this reality yet continues to represent to consumers that "in-vitro" results support its efficacy claims.

**Product Cycles**

55.     To further perpetuate its deceptive and misleading scheme, the ANR Products have a short product cycle and Estee Lauder releases new products every few years based upon some new "research" or purported new formulation, technology, discovery or ingredient.  Estee Lauder does this in order to falsely tout its new products via a re-imagined marketing campaign in order to keep driving sales and profits that would otherwise stagnate once consumers used the products and realized that they do not perform as promised.  This scheme is evidenced by the fact that Estee Lauder discontinues sales and production of its older products once new products are introduced to the market, despite the fact that the claims made regarding the discontinued products reflected purportedly amazing scientific breakthroughs.

56.     For example, Estee Lauder discontinued its ANR Eye Recovery Complex after the launch of its new ANR Eye Synchronized Complex.

57.     Estee Lauder made the following claims for its ANR Eye Recovery Complex: "Never-before repair technologies successfully treat the appearance of lines, dryness, puffiness and dark circles. All night, all day it helps repair the appearance of past damage, while dramatically protecting skin from the aging effects of the environment . . . to give your eyes a younger-looking future."

58.     Estee Lauder's discontinuation of purportedly effective products, like Eye Recovery Complex, demonstrates that Estee Lauder's promised benefits are illusory and nothing more than clever marketing.

**Internet and Television Marketing**

59.     Estee Lauder's Internet marketing for its ANR Products includes, among other things, video presentations, statistical data, and question and answer information on its own website, Esteelauder.com.  Many of its commercials and promotional videos are also readily accessible on youtube.com and on third-party websites such as Macys.com.  Each of these sources repeat the same central marketing theme as the other ANR advertisements, and provides consumers access 24 hours a day, 7 days a week, to Estee Lauder's deceptive advertising campaign for the ANR Products.

**Print Media and Sales Brochures**

60.     Estee Lauder also markets its ANR Products in print media, including by placing advertisements in such widely circulated magazines and newspapers as

the New York Times, Harpers Bazar, Vogue, W, Glamour, Cosmopolitan, Allure, and Elle, among others.

61.    The specific dates and places of publication of each of Estee Lauder's advertisements for the ANR Products are in Estee Lauder's possession, custody or control.

62.    Some of the examples of Estee Lauder's magazine advertising include the following, which regurgitate the same efficacy claims as the online and in-store marketing materials:

A.    

B.



C.



63.    The above advertisement, ¶ 62(C), which appeared in Town & Country,
includes a QR code.  When consumers scan the QR code with their mobile phones,
they are taken to a video which further explains the product and acts as an
extension of the ad.   This link to an online video provides an example of the
uniformity of Estee Lauder's marketing campaign for the ANR Products across all
media.

64.    Estee Lauder's sales brochures, which are made available at
department stores where the ANR Products are sold, echo the same messages as the

23

other forms of Estee Lauder's marketing.  Samples of those sales brochures include the following:




An unprecedented year-long **clinical study proves skin** looks better and better. Day after day, month after month.* And women who didn't use **Advanced Night Repair?** They had more lines, wrinkles, dullness and uneven skintone—a visible increase in aging."



<u>New.</u> An unprecedented year-long **clinical study** proves skin gets better and better. Day after day, month after month.* Furthermore, women who didn't use **Advanced Night Repair** experienced an increase in visible signs of aging during the year."



68% Improvement in the look of Lines and Wrinkles"

76% Improvement in Skin Clarity*

75% Improvement in Skin Tone"

ANR   Control Group



**Sales Representatives**

65.     Estee Lauder also provides training and disseminates uniform information to "Estee Lauder Beauty Advisors" regarding its ANR Products.  These sales representative are paid by Estee Lauder and they are also extensively trained by Estee Lauder to parrot and reinforce the same promises, including DNA discoveries and the other benefits of using the ANR Products, as contained in Estee Lauder's other forms of advertising.  Estee Lauder even sends its marketing and sales executives into the field to meet with consumers and key retailers and to consult with Estee Lauder Beauty Advisors at the points of sale.

**Estee Lauder's Use of Altered Images of Models in its Advertising**

66.    Estee Lauder makes further use of print, television and Internet advertising, wherein it touts the same purported benefits of its skin-care products using spokespersons who claim to exemplify the results of the ANR Products.

67.    What Estee Lauder fails to disclose is that the images of the spokespersons it uses are airbrushed, digitized, embellished, "Photoshopped" or otherwise altered and, therefore, contrary to the claims made by Estee Lauder, cannot and do not illustrate the effectiveness of the ANR Products.

68.    In sum, the images used by Estee Lauder to sell its ANR Products have nothing to do with the effectiveness (or lack thereof) of the ANR Products themselves.

69.    Most recently, the National Advertising Division of the Council of Better Business Bureaus has taken a stance against the use of Photoshop in cosmetics advertising, noting that "[a]dvertising self-regulatory authorities recognize the need to avoid photoshopping in cosmetics advertisements where there is a clear exaggeration of potential product benefits."

70.    Despite this warning, and the increased scrutiny regarding the use of photoshopped images in the marketing of skin care products, upon information and belief, Estee Lauder continues to use altered images in its cosmetic advertising, as can be seen by comparing these photos of Estee Lauder spokesperson Gwyneth Paltrow:





71.     Such deceptive use of altered images in their marketing of purportedly age-negating products only further illustrates the lengths to which Defendants will go to deceive its consumers in order to increase its profits.

**The Results of Estee Lauder's Deceptive Conduct**

72.     Estee Lauder's uniform marketing campaign leaves consumers with the mistaken belief that its ANR products are uniquely able to provide certain permanent age-negating effects on human skin.

73.     In addition to the material misrepresentations as described herein, Defendants' actions are likewise actionable based on their material omissions, which similarly induced Plaintiff and the other members of the Class and NY Subclass to purchase the ANR Products.

74.     For example, Defendants have failed to disclose the following:

•     That none of the ANR Products provide the promised benefits that cannot be found in other, less expensive products;

•     That none of the ANR Products can repair DNA damage;

•     That Defendants know that their references to results from "in-vitro" tests, "clinical" and other "studies" will not translate to actual results for consumers;

•     That Defendants' "clinical studies" are not scientific and are instead designed to support Defendants' marketing materials.

75.      Estee Lauder is in a position to actually know, or should know, that the promised results are not possible, *i.e.* its ANR Products do not contain any ingredients or combination of ingredients that can repair past damage, optimize skin's natural repair processes, effect a dramatic reduction in the visible signs of aging, repair DNA damage, or provide any of the other promised permanent results.

Estee Lauder fails to disclose that its ANR Products do not provide the permanent results as promised.

76.     Until such time as Estee Lauder ceases to engage in deceptive and misleading advertising of the ANR Products, Plaintiff and the other members of the Class and NY Subclass will continue to be harmed.

77.     Estee Lauder also is aware that, because of the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield it ever-greater sales and profits.

78.     Indeed, it is for these precise reasons – increased sales and profits – that Estee Lauder spends millions of dollars to intentionally engage in its deceptive marketing and advertising campaign concerning the ANR Products.

79.     Estee Lauder has succeeded in its deceit and has in fact enjoyed massive profits from its deceptive campaigns.  Such enormous profits would not have been as large but for Estee Lauder's deceptive and misleading ANR marketing and advertising campaign.

80.     Estee Lauder sets the price and charges a premium for its ANR Products.  Plaintiff and the other members of the Class and NY Subclass would not have paid premium prices for the ANR Products – or would not have bought them at all – had they not been exposed to Estee Lauder's false or deceptive advertising about the ANR Products and had, instead, known the truth regarding Estee Lauder's deceptive marketing promises and omissions relating thereto.

81.     Moreover, Plaintiff and the other members of the Class and NY Subclass believed the ANR Products would provide the promised age-negating benefits as detailed herein.  In reality, although Plaintiff and the other members of the Class and NY Subclass paid premium prices for these purportedly unique ANR Product benefits, they did not get what they paid for.  Instead, the ANR Products that Plaintiff and the other members of the Class and NY Subclass purchased did not provide the promised age-negating results.

82.     As a result, and because of Estee Lauder's deceptive marketing, Plaintiff and the other members of the Class and NY Subclass have been harmed as a result of their purchases of the ANR Products.

83.     Without knowing the truth as to the lack of efficacy of the ANR Products, Plaintiff and the other members of the Class and NY Subclass paid premiums for ANR Products and/or received totally worthless products.

## CLASS ACTION ALLEGATIONS

84.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2), and (b)(3) on behalf of the following nationwide consumer class (the "Class"):

> All purchasers of at least one of the ANR Products in the United States from date of product launch through trial (the "Class Period").  Excluded from the Class are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

85.    Plaintiff also seeks to represent a New York Subclass defined as all residents of New York who purchased at least one of the ANR Products ("NY Subclass") during the Class Period.

86.    Members of the Class and the NY Subclass are so numerous that their individual joinder herein is impracticable.  Members of each of these classes number in the tens of thousands.  The precise number of Class and NY Subclass members and their identities are unknown to Plaintiff at this time but will be determined through discovery.  Class and NY Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party sales people.

87.    Common questions of law and fact exist as to all Class and NY Subclass members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)    whether Defendants were unjustly enriched by their conduct;

(b)    whether Defendants breached an express or implied warranty made to Plaintiff and the other members of the Class and NY Subclass;

(c)    whether Defendants advertise or market the ANR Products in a way that is false or misleading;

(d)    whether Defendants concealed from Plaintiff and the other members of the Class and NY Subclass that their ANR Products do not provide the promised results;

(e)    whether, by the misconduct set forth in this Complaint, Defendants engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of its ANR Products;

(f)     whether Defendants violated the New York Gen. Bus. Law §§ 349 & 350;

(g)     whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and the other members of the Class and NY Subclass are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

88.     Plaintiff's claims are typical of the claims of the other members of the Class and the NY Subclass, as all members of the respective classes are similarly affected by Defendants' wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class and NY Subclass.  Plaintiff and all members of the Class and NY Subclass have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

89.     Plaintiff is an adequate representative of the Class and the NY Subclass because her interests do not conflict with the interests of the class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class and the NY Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

90.     The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the members of the Class and NY Subclass. Each individual member of the respective classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and

multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

### FIRST CAUSE OF ACTION
**(Violation of Section 349 of the New York General Business Law)**

91.    Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

92.    Plaintiff brings this cause of action individually and on behalf of the other members of the NY Subclass.

93.    Defendants misrepresented that the ANR Products can, among other things, "repair DNA"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "reduce lines and wrinkles by 68%" or provide any of the other promised age-negating results as described herein.

94.    Defendants also failed to disclose material facts regarding the efficacy of the ANR Products and the purported supporting scientific references and clinical tests as described herein.

95.    Defendants' misrepresentations and omissions constitute an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or the knowing concealment, suppression, or omissions in connection with  the sale or advertisement of merchandise, in violation of § 349 of New York's General Business Law, which makes deceptive acts and practices illegal.

96.    Plaintiff and the other members of the NY Subclass suffered an ascertainable loss directly, foreseeably and proximately caused by Defendants' misrepresentations and/or omissions because they were induced to purchase or paid a price premium due to the advertising, marketing, packaging, labeling and other promotion of ANR Products.  Because of Defendants' misrepresentations and/or omissions, Plaintiff and the other members of the NY Subclass did not receive the benefits they believed they had purchased

97.    Plaintiff and the other members of the NY Subclass suffered economic injury that is a direct result of Defendants' misrepresentations and omissions and they seek to put an end to Defendants' deceptive marketing of the ANR Products and to provide Plaintiff and the other members of the NY subclass with monetary relief for Defendants' deceptive conduct.  Plaintiff and the other members of the NY Subclass also seek statutory damages.

## SECOND CAUSE OF ACTION
### (Violation of Section 350 of the New York General Business Law)

98.    Plaintiff repeats the allegations contained in the above paragraphs 1-90 as if fully set forth herein.

99.    Plaintiff brings this cause of action individually and on behalf of the other members of the NY Subclass.

100.    Defendants materially misled consumers through their specific promises that, among other things, the ANR Products can, "repair DNA"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "reduce lines and wrinkles by 68%" or provide any of the other promised age-negating results as described herein

101.    Defendants also failed to disclose material facts regarding the true nature of the ANR Products as described herein.

102.    Defendants' misleading actions are consumer-oriented conduct and constitute false advertising in violation of § 350 of New York's General Business Law, which makes false advertising illegal.

103.    Plaintiff and the other members of the NY Subclass suffered injury as a result of Defendants' false advertising because they were induced to purchase or paid a price premium due to the misleading advertising, marketing, packaging, labeling and other promotion of ANR Products.  Because of Defendants' false advertising, Plaintiff and the other members of the NY Subclass did not receive the benefits they believed they had purchased.

## THIRD CAUSE OF ACTION
### (Breach of Express Warranty)

104.   Plaintiff repeats the allegations contained in paragraphs 1-90 as if fully set forth herein.

105.   Plaintiff brings this cause of action on behalf of herself, the other members of the national Class, and the other members of the NY Subclass.

106.   Plaintiff, and each of the other members of the Class and NY Subclass, formed a contract with Defendants each time that Plaintiff and the other members of the Class and NY Subclass purchased the ANR Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANR Products would, among other things, "repair DNA"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "reduce lines and wrinkles by 68%" or provide any of the other promised age-negating results as described herein made by Defendants on the packaging and in the marketing materials for the ANR Products, as described above.  The packaging and marketing materials for the ANR Products constitute an express warranty, became part of the basis of the bargain, and is a part of a standardized contract between Plaintiff and the other Class and NY Subclass members on the one hand, and Defendants on the other.

107.   All conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the other members of the Class and NY

Subclass.

108.    Despite express warranties that the ANR Products alone would help among other things, "repair DNA"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "reduce lines and wrinkles by 68%" or provide any of the other promised age-negating results as described herein, the ANR Products do not provide such benefits.

109.    Defendants breached the terms of this contract, including the express warranties, with Plaintiff and the other members of the Class and NY Subclass by failing to provide ANR Products which, among other things, "repair DNA"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "reduce lines and wrinkles by 68%" or provide any of the other promised age-negating results as described herein.

110.    As a result of Defendants' breach of express warranty, Plaintiff and the other members of the Class and NY Subclass were harmed in the amount of the purchase price they paid for the ANR Products.

## FOURTH CAUSE OF ACTION
### (Breach of Implied Warranty of Merchantability)

111.    Plaintiff repeats the allegations contained in paragraphs 1-90 as if fully set forth herein.

112.    Plaintiff brings this cause of action on behalf of herself and the other

members of the national Class and NY Subclass.

113.   Defendants, as the designers, manufacturers, marketers, distributors, and/or sellers impliedly warranted that the ANR Products were fit for their intended purpose in that they would function as advertised.

114.   Defendants breached the warranty implied in the contract for the sale of the ANR Products in that (a) the ANR Products are not effective and proven at-home alternatives to dermatological procedures and treatments that could, for example, "repair DNA"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "reduce lines and wrinkles by 68%" or provide any of the other promised age-negating results as described herein, and are not effective for their intended use, and therefore could not pass without objection in the trade under the contract description, (b) the goods were not of fair average quality within the description, and (c) the goods were unfit for their intended and ordinary purpose in that are they are not generally recognized among qualified experts as safe and effective for the advertised purposes.   Furthermore, the ANR Products did not conform to the promises or affirmations of fact made on the advertisements, packaging and labeling of the products.   As a result, Plaintiff and the other members of the Class and NY Subclass did not receive the goods as impliedly warranted by Defendants to be merchantable.

115.   In reliance upon Defendants' skill and judgment and the implied

warranties of fitness for the purpose, Plaintiff and the other members Class and NY Subclass purchased the ANR Products for use as anti-aging skincare products.

116.   The ANR Products were not altered by Plaintiff or the other members of the Class and NY Subclass.  The ANR Products were defective when they left Defendants' exclusive control and Defendants knew the ANR Products would be purchased and used without additional testing for their chemical properties.  The ANR Products do not perform as advertised and were unfit for their intended purpose and Plaintiff and the other Class and NY Subclass members did not receive the goods as warranted.

117.   As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and the other members of the Class and NY Subclass have been injured and harmed because: (a) they would not have purchased the ANR Products or would not have purchased the products on the same terms if the true facts regarding their efficacy had been known; (b) they paid a price premium due to the mislabeling of ANR Products; and (c) ANR Products did not have the quality, efficacy or value as promised.

<div align="center">

FIFTH CAUSE OF ACTION
**(Unjust Enrichment)**

</div>

118.   Plaintiff repeats the allegations contained in paragraphs 1-90 as if fully set forth herein.

119.   Plaintiff brings this cause of action on behalf of herself and the other members of the national Class and NY Subclass.

120.   By its wrongful acts and omissions for the ANR Products, as discussed

above, with false and materially misleading claims, Defendants were unjustly enriched at the expense of Plaintiff and the other members of the Class and NY Subclass, who did not receive the goods to which they were entitled – as discussed in detail above – for the payments made to Defendants, and thus, Plaintiff and the other members of the Class and NY Subclass were unjustly deprived.

121.   It would be inequitable and unconscionable for Defendants to retain the profit, benefit and other compensation they obtained from their deceptive, misleading, and unlawful conduct alleged herein.

122.   Plaintiff and the other members of the Class and NY Subclass seek restitution from Defendants, and seek an order of this Court disgorging all profits, benefits, and other compensation obtained by Defendants from their wrongful conduct.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.     For an order certifying the Class and the NY Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class and NY Subclass Representative, and her attorneys as Class Counsel to represent the Class and NY Subclass members;

B.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.     For an order finding in favor of the Plaintiff and the other members of the Class and the NY Subclass on all counts asserted herein;

D.      For an order awarding compensatory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.      For prejudgment interest on all amounts awarded;

F.      For an order of restitution and all other forms of equitable monetary relief;

G.      For injunctive relief as pleaded or as the Court may deem proper; and

H.      For an order awarding Plaintiff and the other members of the Class and NY Subclass their reasonable attorneys' fees and expenses and costs of suit.

<div style="margin-left: 50%;">

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By: /s/ *Caroline F. Bartlett*
    CAROLINE F. BARTLETT
    James E. Cecchi
    Zachary S. Bower
    CARELLA, BYRNE, CECCHI,
    OLSTEIN, BRODY & AGNELLO, P.C.
    5 Becker Farm Road
    Roseland, New Jersey 07068
    (973) 994-1700

</div>

Dated:  August 19, 2013

Of Counsel:

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York  10017
(646) 722-8500

Adam J. Levitt
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
(312) 214-0000

*Attorneys for Plaintiff*

## **JURY DEMAND**

Plaintiff hereby demands a trial by jury on all claims so triable.

>CARELLA, BYRNE, CECCHI,
>OLSTEIN, BRODY & AGNELLO
>Attorneys for Plaintiff


>By:   /s/ Caroline F. Bartlett
>CAROLINE F. BARTLETT
>James E. Cecchi
>Zachary S. Bower
>CARELLA, BYRNE, CECCHI,
>OLSTEIN, BRODY & AGNELLO, P.C.
>5 Becker Farm Road
>Roseland, New Jersey 07068
>(973) 994-1700

Dated:  August 19, 2013

Of Counsel:

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000

Adam J. Levitt
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
(312) 214-0000

*Attorneys for Plaintiff*