UNITED STATES DISTRICT COURT                    <u>NOT FOR PUBLICATION</u>
EASTERN DISTRICT OF NEW YORK

DONNA TOMASINO,

                            Plaintiff,

          – against –                                   <u>MEMORANDUM & ORDER</u>

THE ESTEE LAUDER COMPANIES INC.,                        13-CV-4692 (ERK) (JMA)
ESTEE LAUDER, LLC, ESTEE LAUDER INC.,

                            Defendants.

KORMAN, J.:

  On October 15, 2013, plaintiff Donna Tomasino ("Tomasino"), on behalf of herself and

all other similarly situated, filed an Amended Complaint seeking damages and injunctive relief

against The Estee Lauder Companies Inc., Estee Laboratories, LLC, and Estee Lauder Inc.

(collectively "Estee Lauder") alleging five causes of action: (1) violation of Section 349 of the

New York General Business Law; (2) violation of Section 350 of the New York General

Business Law; (3) breach of an express warranty; (4) breach of the implied warranty of

merchantability; and (5) unjust enrichment. The allegations in the Amended Complaint arise

from Estee Lauder's marketing of five cosmetic products from its Advanced Night Repair

("ANR") Collection. Estee Lauder has moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the

claims for injunctive relief, and Fed. R. Civ. P. 12(b)(6) to dismiss the Amended Complaint in its

entirety.

## FACTS

  Tomasino is a citizen and resident of New York. Am Compl. ¶ 19. She commenced this

action on behalf of a "nationwide consumer class" and a "New York Subclass." Am. Compl. ¶¶

84-85. Tomasino asserts that the precise number and identities of the class members are

currently unknown and "will be determined though discovery," but that "each of these classes number in the tens of thousands," Am. Compl. ¶ 86, and that the "aggregate amount in controversy exceeds $5 million," Am. Compl. ¶ 26.  The Estee Lauder Companies Inc. and Estee Lauder Inc. are corporations organized under Delaware law, and each has its principal place of business in New York.  Am. Compl. ¶¶ 23, 25.  Estee Laboratories, LLC is a Delaware limited liability company.  Am. Compl. ¶ 24.

Tomasino alleges that "in or about 2010" she purchased two cosmetics products from Estee Lauder's ANR Collection—ANR Synchronized Recovery Complex and ANR Eye Synchronized Complex[1]—at a Macy's department store in Staten Island.  Am. Compl. ¶¶ 19, 21. She claims that she purchased the ANR products in reliance on "efficacy claims" that she saw in magazine advertisements and at the point of sale.  Am. Compl. ¶¶ 20-21.  Specifically, Tomasino alleges that the defendants misrepresented that the ANR products have "certain age-negating effects on the human skin." Am. Compl. ¶ 2.  The plaintiff included multiple screen shots of Estee Lauder advertisements in the Amended Complaint.  As relevant to plaintiff's allegations, the included images make the following representations about the ANR products:

- "Uniquely formulated to work in a way no other treatment can, this patented complex is advanced with our exclusive Chronolux[TM] Technology.  So innovative, this remarkable recovery complex actually supports the natural synchronization of skin's repair and protection processes.  **Its mission? Repair the appearance of past damage** and address the visible damaging effects of environmental assaults such as UV light, smoke and pollution.  **20+ Patents Worldwide.**  Am. Compl. ¶ 29

- "In an unprecedented year-long study, women continued to experience a dramatic reduction in the major signs of visible aging, day after day, month after month.  Skin looks smoother, younger, more radiant and healthy.  Furthermore, women who didn't use Advanced Night Repair experienced an increase in visible signs of aging."  Graphs that appear next to this text indicate that the study resulted in a 68% improvement in "Lines &

---

[1] Tomasino's proposed classes include purchasers of ANR Synchronized Recovery Complex and ANR Eye Synchronized Complex, as well as three other ANR Collection products—ANR Night Repair Synchronized Recovery Complex II, ANR Concentrate Recovery Boosting Treatment, and ANR Eye Serum Infusion.  Am. Compl. ¶¶ 2, 84-85.

Wrinkles," 63% or 76% improvement in "Skin Clarity," and 75% improvement in "Skin Tone."  Am. Compl. ¶¶ 39, 45, 65.

- "Inspired by 25 years of groundbreaking DNA research, Estée Lauder scientists bring you this high-performance serum to help continuously repair the appearance of past damage.  With age-defying power of our exclusive Chronolux<sup>TM</sup> Technology, **you'll see a dramatic reduction in the visible signs of aging.**"  Am. Compl. ¶ 63(B).

- "Experience a <u>dramatic</u> reduction in the major signs of visible aging—lines, wrinkles, uneven skintone and loss of clarity.  Skin looks smoother, younger, more radiant and healthy-looking."  Am. Compl. ¶ 65.

- "**Synchronized + Enhanced Environmental Repair:**  Inspired by the science of clock genes, exclusive Chronolux<sup>TM</sup> and AGT Repair Technologies support the natural synchronization of skin's repair processes so that it repairs itself at exactly the right time."  Am. Compl. ¶ 65.

Based on these representations, and presumably others that do not appear in the Amended Complaint, the plaintiff complains that Estee Lauder misrepresented that the ANR products can, among other things, "repair DNA," "support the natural synchronization of skin's repair and protection processes," "repair the appearance of past damage," "address the visible damaging effects of environmental assaults . . . before they become permanent," "prevent future damage," and "reduce lines and wrinkles by 68%."  Am. Compl. ¶¶ 93, 100, 106, 114.  Tomasino contends that "[i]n reality, the ANR Products do not and cannot live up to the efficacy claims made by Estee Lauder because none of their ingredients can provide the promised results."  Am. Compl. ¶ 8.

In support of her allegation that Estee Lauder "convey[s] the misleading message to consumers that using the ANR products will repair damage to their skin cells and/or repair their DNA[,]" Am. Compl. ¶ 31, Tomasino points to various aspects of the Estee Lauder's marketing that she contends were used to lend credibility to the claimed efficacy of the ANR products.  For example, she references an allegedly misleading clinical study, resulting in misleading statistics, that suggests that the ANR Synchronized Recovery Complex yielded a 68% improvement in

3

"Lines & Wrinkles" in the test population after 12 months.  Am. Compl. ¶¶ 39-42.  She also claims that it was misleading for Estee Lauder to cite "in-vitro" tests—"ingredient test[s] in a test tube or petri dish"[2]—and to indicate that it had patents for its ANR products, but not to include the patent numbers.  Am. Compl. ¶¶ 47-50, 55, 63(B).  The plaintiff does not, however, argue that the claims about these studies, tests, and patents are false or inaccurate.  Rather, she simply asserts that references to them furthers the misleading message that the ANR products can reduce the visible signs of aging including lines and wrinkles and help prevent further damage because "the ANR Products do not and cannot live up to the efficacy claims made by Estee Lauder because none of their ingredients can provide the promised results."  Am. Compl. ¶ 8.

## DISCUSSION

### I. Standing

The defendants have moved pursuant to Fed. R. Civ. P. 12(b)(1) to dismiss the plaintiff's claims for injunctive relief because they claim she does not have standing to seek such relief.  The "irreducible constitutional minimum" of standing requires a plaintiff to show that:  (1) it has suffered a concrete and particularized injury in fact which is actual or imminent, not "conjectural or hypothetical," (2) the injury is fairly traceable to the defendant's allegedly unlawful conduct, and (3) the injury will likely be redressed by the requested relief.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).  While the plaintiff alleges that she purchased ANR products as a result of the defendants' allegedly false or misleading advertising, "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects."  *O'Shea v. Littleton*, 414 U.S. 488, 495-96 (1974).  Moreover, "[a]n allegation of future injury may suffice" but only "if the threatened injury is certainly impending, or there is a substantial risk that the harm will occur."

---

[2] None of the advertisements that appear in the Amended Complaint mention in-vitro testing.

*Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341 (2014) (citing *Clapper v. Amnesty Int'l USA,* ––– U.S. ––––, 133 S. Ct. 1138, 1147, 1150 n.5 (2013) (internal quotation marks omitted).

While Tomasino suggests that she remains a potential Estee Lauder customer and is likely to be misled again, Pl.'s Opp'n to Mot. to Dismiss at 29, ECF No. 14, she has not alleged a sufficient future injury to establish standing to assert her claims for injunctive relief because she has demonstrated that she is, in fact, unlikely to purchase ANR products again. *See Vaccariello v. XM Satellite Radio, Inc.*, 295 F.R.D. 62, 68 (S.D.N.Y. 2013). Indeed, she has made clear that she does not believe the ANR products have the effects advertised by Estee Lauder, and that she would not have purchased them in the first place absent the allegedly misleading advertisements. *See* Am. Compl. ¶¶ 19 ("Plaintiff would not have purchased [the ANR Products] . . . had Estee Lauder not made such false and deceptive claims and instead disclosed the true nature of its products"), 83 (plaintiff received "totally worthless products"); Pl.'s Opp'n to Mot. to Dismiss at 29 ("Plaintiff now appreciates the false and misleading nature of [Estee Lauder's] efficacy claims").

Moreover, the fact that unknowing class members might purchase ANR products based on the defendants' allegedly unlawful advertising does not establish standing. *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 199 (2d Cir. 2005) ("the named class plaintiffs 'must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent.'"); *see also Allee v. Medrano,* 416 U.S. 802, 828–29 (1974) ("[A] named plaintiff cannot acquire standing to sue by bringing his action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he does not share. Standing cannot be acquired through the back door of a class action.") (Burger,

C.J., concurring in part, dissenting in part).  Accordingly, Tomasino does not have standing to seek injunctive relief.

## II.  Merits

Nevertheless, the plaintiff's claims must be dismissed because she has failed to state a claim upon which relief can be granted.  When reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), "[t]he court accepts all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."  *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010).  To survive a motion to dismiss, the plaintiffs' complaint must allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* at 678.

### A.  N.Y. General Business Law §§ 349 and 350

New York General Business Law ("GBL") § 349 declares unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service."[3]  N.Y. Gen. Bus. Law § 349(a). "A plaintiff under section 349 must prove three elements:  first, that the challenged act or practice was consumer-oriented; second, that it was

---

[3] The defendants claim that the plaintiff's §§ 349 and 350 claims are untimely because she failed to commence her action within the three-year statute of limitations period, which begins when a plaintiff has been injured by the allegedly deceptive act or practice.  N.Y. C.P.L.R. 214(2); *Gaidon v. Guardian Life Ins. Co. of Am.*, 750 N.E.2d 1078, 1082-83 (N.Y. 2001); *see also Gristede's Foods, Inc. v. Unkechauge Nation*, 532 F. Supp. 2d 439, 452 (E.D.N.Y. 2007) ("New York courts have uniformly applied a three-year statute of limitations to section 349 and section 350 cases.").  Tomasino commenced this action on August 20, 2013, *see* Compl., ECF No. 1, and alleges that she purchased ANR products "in or about 2010." Am. Compl. ¶ 21.  Notwithstanding the lack of specificity with respect to the date in 2010, the year in which the plaintiff claims to have purchased the ANR products, the Amended Complaint is not subject to dismissal.  The statute of limitations is not an element of the cause of action.  Instead, it is a defense on which the defendants bear the burden of proof, and the plaintiff need not plead facts necessary to rebut such a defense.  *See Abbas v. Dixon*, 480 F.3d 636, 640 (2d Cir. 2007)

misleading in a material way; and third, that the plaintiff suffered injury as a result of the deceptive act[.]"  *Stutman v. Chem. Bank*, 731 N.E.2d 608, 611 (2000).  The second element requires, whether it is a representation or omission, that the defendant's misleading or deceptive conduct is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Id.* at 611-12.  "A claim of false advertising under Section 350 must meet all of the same elements as a claim under Section 349, and the plaintiff must further demonstrate proof of actual reliance."  *Merck Eprova AG v. Brookstone Pharm., LLC*, 920 F. Supp. 2d 404, 425 (S.D.N.Y. 2013); *see also Morrissey v. Nextel Partners, Inc.*, 895 N.Y.S.2d 580, 588 (N.Y. App. Div. 2010).  "Claims under GBL §§ 349 and 350 are not subject to the pleading-with-particularity requirements of Fed. R. Civ. P. 9(b)[,]" *Ackerman v. Coca-Cola Co.*, No. CV-09-0395 (JG) (RML), 2010 WL 2925955, at *22 (E.D.N.Y. July 21, 2010), and thus are subject to the notice-pleading requirements of Fed. R. Civ. P. 8(a), *see Pelman ex rel. Pelman v. McDonald's Corp.,* 396 F.3d 508, 511 (2d Cir. 2005); *Leonard v. Abbott Labs., Inc.*, No. 10-CV-4676 (ADS) (WDW), 2012 WL 764199, at *18 (E.D.N.Y. Mar. 5, 2012).

Nevertheless, even under Rule 8, the plaintiff has failed to plead with the requisite "plausibility" that any of the defendants' claims were materially misleading.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (where the plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed").  Indeed, the complaint does not provide "factual allegations explaining *how* any specific advertising claims were" false or misleading.  *See Dimuro v. Clinique Labs. LLC*, --- F. App'x -----, No. 13-4551-cv, 2014 WL 3360586, at *2 (2d Cir. July 10, 2014).  The plaintiff's "mere conclusory statements" that they are misleading "do not suffice" to defeat the motion to dismiss.  *Ashcroft v. Iqbal*, 556 U.S. 662, 668 (2009).

7

Tomasino alleges "specific statements that form the basis of [her] claims," *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 543 (S.D.N.Y. 2013) (internal quotation marks omitted), including the defendants' alleged claims that the ANR products have "certain age-negating effects on the human skin," Am. Compl. ¶ 2, and that the products can "repair DNA," "support the natural synchronization of skin's repair and protection processes," "repair the appearance of past damage," "address the visible damaging effects of environmental assaults . . . before they become permanent," "prevent future damage," and "reduce lines and wrinkles by 68%." Am. Compl. ¶¶ 93, 100, 106, 114. While she insists that all of these claims are "false, deceptive, or misleading misrepresentations," Am. Compl. ¶ 12, the only factual support she provides in support of her assertion is that "the ANR Products do not and cannot live up to the efficacy claims made by Estee Lauder because none of their ingredients can provide the promised results." Am. Compl. ¶ 8.

While the claim that the products cannot work is a valid theory of affirmatively misleading advertising,[4] s*ee Hughes v. Ester C Co.*, 930 F. Supp. 2d 439, 460 (E.D.N.Y. 2013); *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013), Tomasino "fail[s] to allege what the specific ingredients in each product are and that these ingredients lack the ability to improve skin appearance." *DiMuro*, 2014 WL 3360586, at *2. She also fails to specify whether all of Estee Lauder's allegedly misleading claims were made with respect to each ANR product, and if not, with respect to which products they were made. Unlike cases denying motions to dismiss §§ 349 and 350 claims, the plaintiff points to nothing, in the form of scientific evidence or otherwise,[5] that could discredit Estee Lauder's statements about the ANR products' skin

---

[4] The plaintiff has not merely alleged a non-actionable "lack of substantiation" claim premised on the allegation that Estee Lauder's advertising is deceptive because its statements are not substantiated by science. Rather, she claims that Estee Lauder's "efficacy claims" are affirmatively untrue. *See Quinn*, 958 F. Supp. 2d at 544 (distinguishing claim of affirmative falsehood from lack of substantiation claim).
[5] Contrary to the Estee Lauder's argument, it is not clear that the plaintiff must present plausible scientific support to challenge advertising claims that contain scientific references. *See* Defs.' Mot. to Dismiss at 12. I need

8

benefits.  *See Quinn*, 958 F. Supp. 2d at 543-44 (holding plaintiffs plausibly alleged defendants'

claims of health benefits of dietary supplement were false or deceptive where the "plaintiffs

cite[d] to numerous scientific studies that arguably support[ed] their conclusion" that the

supplement could not work as advertised).   Indeed, even though Tomasino asserts that she

purchased the products "for personal use," Am. Compl. ¶ 19, she stops short of alleging that she

actually used either of the ANR products she purchased.  It is not enough to simply allege, as the

plaintiff does, that the ANR products do not and cannot work, and thus the advertisements

espousing their positive qualities are misleading.

Tomasino's contentions that Estee Lauder's references to product tests and patents are

misleading fail for the same reason.  She contends that reference to those patents and tests are

misleading simply because they are used to advertise ANR products that cannot work.  Nowhere,

however, does the plaintiff assert that any representations about the patents or tests themselves

are inaccurate.  For example, the plaintiff's Amended Complaint contains an image from Estee

Lauder's website that contains the heading "Clinical study proves skin gets better and better,"

and provides that:

> In an unprecedented year-long study, women continued to experience a dramatic reduction in the major signs of visible aging, day after day, month after month.
>
> Skin looks smoother, younger, more radiant and healthy.
>
> Furthermore, women who didn't use Advanced Night Repair experienced an increase in visible signs of aging during the year.

Am. Compl. ¶ 39.  The image contains a graph indicating that there was a 68% improvement in

"Lines & Wrinkles" among women who used an ANR product—presumably the ANR

Synchronized Recovery Complex, which is pictured next to the graph—relative to women who

---

not address that issue because the plaintiff has presented no support, scientific or otherwise, to support her claim that "the ANR Products do not and cannot live up to the efficacy claims made by Estee Lauder."  Am. Compl. ¶ 8.

did not use the products.  Am. Compl. ¶ 39.  Separately, the plaintiff alleges that it was misleading for Estee Lauder to refer to in-vitro testing without informing consumers that such tests "cannot support efficacy claims regarding the ANR products because such testing cannot assess the cosmetic's ability to penetrate actual human skin in the real world and under real world conditions."  Pl.'s Opp'n to Mot. to Dismiss at 14 (citing Am. Compl. ¶¶ 55, 74).  There is nothing misleading, however, about presenting scientific research, as long as the year-long study in fact resulted in that 68% improvement, and the in-vitro testing results were accurately conveyed.  *Cf. Dimuro* 2014 WL 3360586, at *3 ("there is nothing misleading about a dramatization that presents 'average results' as long as the dramatization accurately depicts the average results").

Likewise, the plaintiff does not argue that Estee Lauder's statements that it possesses patents for the ANR products are false.  Instead, the plaintiff claims that reference to those patents was misleading because Estee Lauder did not include patent numbers in its advertisements.  Again, the failure to include those numbers does not make the assertion misleading.  In fact, in support of her argument, the plaintiff has misleadingly cited 35 U.S.C. § 287(a), which provides that when selling a patented article, the patent holder *may* label the article as patented and provide the patent number.  If the patent holder does not do so, he cannot recover damages in a patent infringement action.  35 U.S.C. § 287(a).  The statute has nothing to do with advertising, and does not require a claim that a product is patented to be accompanied by patent numbers.

The plaintiff's remaining arguments that she plausibly alleges her §§ 349 and 350 claims are conclusory and unpersuasive.  She contends that if "the ANR products were actually able to repair past DNA damage, reduce lines and wrinkles by 68%, or provide any of the other age-negating effects [Estee Lauder] promises, the ANR products would trigger drug regulation,"

Pl.'s Opp'n to Mot. to Dismiss at 17; *see also* Am. Compl. ¶ 51, and that the fact that they are not so regulated is evidence that Estee Lauder's marketing claims are false. She fails, however, to cite any regulation or law that applies to products that achieve such results. *See Dimuro*, 2014 WL 3360586, at *3. The plaintiff also submits an implausible theory that Estee Lauder's short product cycle—that it "releases new products every few years"—is evidence that efficacy claims about the ANR products are illusory. Pl.'s Opp'n to Mot. to Dismiss at 17-18; Am. Compl. ¶¶ 56-59. It is unclear, however, how releasing new products based on new research indicates that the previously available products could not achieve their advertised results. Indeed, releasing an improved version of a product makes sense not only from a sales perspective, but also from the perspective of consumers, who receive a higher quality product.

### B. Breach of Warranty Claims

The defendants argue that the plaintiff's breach of express and implied warranty claims should be dismissed because the plaintiff failed to provide the defendants with timely notice of those alleged breaches. To assert a breach of warranty claim under New York law, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy[.]" N.Y. U.C.C. § 2-607(3)(a); *see also Quinn*, 958 F. Supp. 2d at 544 (dismissing breach of warranty claim for failure to provide notice); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018, at *4-5 (S.D.N.Y. May 22, 1996) (same). "The purpose of the [the notice requirement] is not to inform the seller of his own act, but to reveal to him that the buyer chooses to assert the act as a breach and seek a legal remedy therefor[,]" so that the seller need not bear the hardship of "allowing a buyer at any time within the period of the Statute of Limitations to assert that the goods are or were defective though no objection was made when they were received." *In re Gotham Silver Co.*, 91 F. Supp. 520, 523 (S.D.N.Y. 1950) (Rifkind, J.) (citing 2 Williston on Sales, 2d Ed., 1259 (1924))

(internal quotation marks omitted).  "[R]equiring notice is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy."  N.Y. U.C.C. § 2-607, cmt. *4*.

"[T]he sufficiency and timeliness of the notice is generally a question for the jury." *Hubbard*, 1996 WL 274018, at *4.  "[T]he notice required to preserve [the] right to sue for damages need only 'alert [the prospective defendant] that the transaction [was] troublesome.'" *Amerol Corp. v. Am. Chemie-Pharma, Inc.*, No. CV 04-0940 (JO), 2006 WL 721319, at *8 (E.D.N.Y. Mar. 17, 2006) (quoting *Cliffstar*, 678 N.Y.S.2d at 223) (third and fourth alterations in original).  Indeed, the comments to the U.C.C. observe that "[t]he notification . . . need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation[,]" and that it is not necessary to include either "a clear statement of all the objections that will be relied on by the buyer," or "a claim for damages or of any threatened litigation or other resort to a remedy."  N.Y. U.C.C. § 2-607, cmt. *4*. Moreover, what constitutes a "reasonable time" for taking an action "depends on the nature, purpose and circumstances of such action."  N.Y. U.C.C. § 1-204(2).  Nevertheless, "courts have found some delays unreasonable as a matter of law."  *Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, No. 03-CV-4892 (JFB) (MLO), 2006 WL 2654827, at *9 (E.D.N.Y. Sept. 15, 2006).

The Amended Complaint does not contain an allegation that the plaintiff notified the defendants of a breach of warranty.  The allegation that "[a]ll conditions precedent to Defendants' liability under this contract have been performed by Plaintiff and the other members of the Class and NY Subclass[,]" Am. Compl. ¶ 107, is insufficient.  *See In re Frito-Lay N. Am., Inc. All Natural Litig.*, No. 12-MD-2413 (RRM) (RLM), 2013 WL 4647512, at *28 (E.D.N.Y. Aug. 29, 2013).  Nevertheless, for the first time as an exhibit attached to her opposition to the defendants' motion to dismiss, Tomasino submitted a "formal demand letter" dated July 3, 2013,

12

sent on behalf of Tomasino and a putative class, demanding that Estee Lauder cease its "unfair and deceptive" marketing practices, and monetary relief, including damages "representing the price paid by [Tomasino] and Class members for the ANR Products" and reimbursement for "expenses and reasonable attorneys' fees."   Bartlett Decl., Ex. C, ECF No. 15.   Like the Amended Complaint, the letter fails to associate any of Estee Lauder's advertising claims with a particular ANR product or indicate whether Tomasino used any of the ANR products.   Bartlett Decl., Ex. C.   Moreover, the letter does not indicate which ANR products Tomasino purchased. Bartlett Decl., Ex. C.

The plaintiff's letter cannot save its breach of warranty claims in this case.   In some cases it might be appropriate to provide the plaintiff an opportunity to replead where, even if notice is not alleged in the complaint, there is evidence that some form of notice may have occurred.   *See Hubbard*, 1996 WL 274018, at *5 n.5.   Under the circumstances here, however, the two to three years that the plaintiff allowed to pass from "in or about 2010" until the time of her letter on July 3, 2013, constituted an unreasonable delay.[6]   Because the plaintiff fails to explicitly allege that she used either of the two ANR products she claims to have purchased, it is impossible to know precisely when she discovered the alleged breach.   Nevertheless, she does not posit any reason why the products' alleged shortcomings would not have been readily discoverable so that she could have provided notice of the alleged breach of warranty without delay.   *Compare Archstone v. Tocci Bldg. Corp. of New Jersey, Inc.*, 959 N.Y.S.2d 497, 499 (App. Div. 2012) (holding that notice of alleged breach of warranty and intent to assert legal rights regarding allegedly defective

---

[6] The defendants also argue that the plaintiff was required to provide pre-suit notice of the alleged warranty breaches.  While there is some support for that proposition in cases from other jurisdictions, *see Eckler v. Wal-Mart Stores, Inc.*, No. 12-CV-727-LAB-MDD, 2012 WL 5382218, at *8 (S.D. Cal. Nov. 1, 2012) (citing *Alvarez v. Chevron Corp.*, 656 F.3d 925, 932 (9th Cir. 2011)), New York cases applying N.Y. U.C.C. § 2-607(3) suggest that a plaintiff's pleadings may constitute reasonable notice in certain cases, *see*, *Panda Capital Corp. v. Kopo Int'l, Inc.*, 662 N.Y.S.2d 584, 586 (App. Div. 1997) (applying section 2-607(3) and observing "that the complaint and subsequent amended complaint in this action themselves constituted such notice"); *but see Mendelson v. Gen. Motors Corp.*, 432 N.Y.S.2d 132, 136-37 (Sup. Ct. 1980) (in discussion of separate state warranty statute stating "the prelitigation notice required by section 2-607(3)(a) is clearly not required by the Act").

13

wall panels used for construction project provided more than two years after final delivery, and after installation, unreasonable as a matter of law because "[q]ualities that are apparent, such as size and color, reasonably should be inspected and complained of soon after the goods . . . have been delivered"); *Wyandotte Indus., Div. of First Hartford Corp. v. E.Y. Neill & Co.* (*In re First Hartford Corp.*), 63 B.R. 479, 487 (Bankr. S.D.N.Y. 1986) ("where . . . there has been a delay of nearly five months before any notification, the buyer had ample opportunity to and did in fact examine the goods, discovering the alleged defect, we hold that notification was untimely"), *with First Sec. Mortg. Co. v. Goldmark Plastics Compounds, Inc.*, 862 F. Supp. 918, 933-34 (E.D.N.Y. 1994) (delayed notice of alleged breaches reasonable because as broker of the product the plaintiff did not use it itself, and "[i]n most instances only when the end-user actually used the material would any defects be discovered").

In light of the plaintiff's attempt to characterize the ANR products as "goods sold for immediate consumption,"[7] *see* Pl.'s Opp'n to Mot. to Dismiss at 21, it is unlikely she left her face creams sitting in her medicine cabinet unused for a substantial period of time. *See Moxie Indus., Inc. v. Hayden*, 677 F. Supp. 187, 192 (S.D.N.Y. 1988) (letter regarding perishable inventory "was too late as a notice of breach . . . occurring as it did more than nine months after deliver"). Even so, interpreting the timeline of the allegations in the Amended Complaint favorably for the plaintiff, assuming Tomasino purchased the ANR products in late 2010, that

---

[7] The plaintiff characterizes the ANR products as "goods sold for immediate consumption" in support of her unpersuasive argument that an exception to the § 2-607(3) notice requirement applies to such goods. In reliance on *Kennedy v. F. W. Woolworth Co.*, 200 N.Y.S. 121, 122 (App. Div. 1923), the plaintiff asserts that the purposes of the notice requirement are not implicated in cases involving allegedly defective retails goods. Pl.'s Opp'n to Mot. to Dismiss at 21. To the extent such an exception exists, however, *Kennedy* and cases that cite it refer to products for "human consumption" to describe products that are ingested. *See Id.*; *Fischer v. Mead Johnson Labs.*, 341 N.Y.S.2d 257, 259 (App. Div. 1973); *In re Hydroxycut Mktg. & Sales Practices Litig.*, No. 09MD2087-BTM (AJB), 2010 WL 2839480, at *3 (S.D. Cal. July 20, 2010). Indeed, *Kennedy*, which applied a similar provision of the statutory predecessor to § 2-607 to breach of warranty claims arising from injuries caused by a child's consumption of candy sold by the defendant, observed that "[t]o require a complaint which . . . is really grounded on tortious elements[] to indicate a notice of . . . claim of damage within a reasonable time on account of defect of *edible* goods in a retail transaction, would strain the rule beyond a breaking point of sense or proportion to its intended object." 200 N.Y.S. at 122 (emphasis added).

she didn't use them for six months after that, and that it would take a full year—the length of the studies cited in the Amended Complaint—for the plaintiff to discover the alleged shortcomings, there would still be another year during which she would have failed to notify the defendants of the alleged breach.  Accordingly, the plaintiff's breach of warranty claims are dismissed for failure to provide notice of the alleged breaches to the defendants within a reasonable time.

The plaintiff's claim based on the implied warranty of merchantability also fails because she is not in privity with the defendants.  "The implied warranty of merchantability is a guarantee by the seller that its goods are fit for the intended purpose for which they are used and that they will pass in the trade without objection." *Wojcik v. Empire Forklift, Inc.*, 783 N.Y.S.2d 698, 700 (App. Div. 2004) (internal quotation marks omitted).  "[A]bsent privity of contract, [however,] a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty." *Westchester Cnty. v. Gen. Motors Corp.*, 555 F. Supp. 290, 294 (S.D.N.Y. 1983); *see also Westport Marina, Inc. v. Boulay*, 783 F. Supp. 2d 344, 356 (E.D.N.Y. 2010).  The plaintiff does not allege that she purchased the products from Estee Lauder or that she suffered personal injury.  Rather, she asserts that she suffered economic harm, and purchased the ANR products from a Macy's department store.  Am. Compl. ¶ 19.  Thus, the lack of privity precludes her implied warranty claim.

Finally, the breach of warranty claims fail to state a plausible cause of action under Fed. R. Civ. P. 8(a).  The breach of warranty claims are based on the same underlying conduct that is the basis for the §§ 349 and 350 claims.  Essentially, the plaintiff claims that Estee Lauder's allegedly false or misleading promises formed the basis of an express warranty and because they were false, *i.e.* they "do not and cannot live up to the efficacy claims made by Estee Lauder[,]" Am. Compl. ¶ 8, the warranty was breached.  Likewise, the "implied warranty claim . . . arises from the ANR Products' failure to conform to promises" in advertisements, and on their labeling

and packaging.  Am. Compl. ¶ 114; Pl.'s Opp'n to Mot. to Dismiss at 29.  Again, because the ANR products allegedly cannot achieve their purported purpose of combating the visible signs of aging, they are not fit for that purpose.  Because the plaintiff's breach of warranty claims are based on the same conclusory allegations as her §§ 349 and 350 claims, they do not provide a sufficient factual basis to establish a plausible breach.  *See DiMuro v. Clinique Labs., LLC*, --- F. App'x -----, No. 13-4551-cv, 2014 WL 3360586, at *4 (2d Cir. July 10, 2014).  Thus, the plaintiff's breach of warranty claims are dismissed.

### C. Unjust Enrichment

Leaving aside whether the plaintiff alleges a plausible unjust enrichment action, the claim must be dismissed because she insists, and the defendants do not object, that her purchase of the ANR products created an express contract.  "Where an express contract is conceded, as it is here, a plaintiff may not proceed also on a quasi-contract theory because it is foreclosed by the very existence of the express contract."  *Arthur Properties, S.A. v. ABA Gallery, Inc.*, No. 11 Civ. 4409 (LAK), 2011 WL 5910192, *4 (S.D.N.Y. Nov. 28, 2011) (Kaplan, J.); *see also Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005) ("New York law does not permit recovery in quantum meruit, however, if the parties have a valid, enforceable contract that governs the same subject matter as the quantum meruit claim."); *Whitman Realty Grp., Inc. v. Galano*, 838 N.Y.S.2d 585 (N.Y. App. Div. 2007) ("[r]ecovery for unjust enrichment is barred by a valid and enforceable contract").  Multiple times in the Amended Complaint, the plaintiff asserts that she and other members of the proposed classes "formed a contract with the Defendants each time [they] . . . purchased the ANR Products," and "[t]he terms of that contract include[d] the efficacy promises and affirmations of fact" underlying all of the plaintiff's claims.  Am. Compl. ¶¶ 106, 107, 109, 114. Accordingly, the plaintiff's unjust enrichment action is dismissed.

**CONCLUSION**

The defendants' motion to dismiss is granted.  The plaintiff's New York General Business Law §§ 349 and 350 claims are dismissed without prejudice and with leave to replead. Her remaining claims, for breach of express warranty, breach of implied warranty, and unjust enrichment, are dismissed with prejudice.

**SO ORDERED.**

Brooklyn, New York
August 26, 2014                                     /s/_____
                                                   Edward R. Korman
                                                   Senior United States District Judge

17