**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| DONNA TOMASINO, individually, and on behalf of all others similarly situated, | Case No.1:13-cv-04692 ERK-JMA |
| Plaintiff, | |
| v. | **SECOND AMENDED CLASS ACTION COMPLAINT and DEMAND FOR JURY TRIAL** |
| THE ESTEE LAUDER COMPANIES INC., ESTEE LABORATORIES, LLC, and ESTEE LAUDER INC., | |
| Defendants. | |

Plaintiff, by her attorneys, individually and on behalf of all others similarly situated, makes the following allegations based upon information and belief and the investigation of counsel, except as to allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.     Defendant, The Estee Lauder Companies Inc. (together with Defendants Estee Laboratories, LLC and Estee Lauder Inc., "Estee Lauder" or "Defendants") is a self-proclaimed "pioneer in the cosmetics industry" with more than $9.7 billion in annual sales.  More than 43 percent of those sales are generated by Estee Lauder's skin care products, which constitutes its "most profitable product category."

2.     Estee Lauder enjoys such significant sales in part because of its false, deceptive or misleading representations that products from its Advanced Night

Repair ("ANR") Collection, specifically Advanced Night Repair Synchronized Recovery Complex, Advanced Night Repair Eye Synchronized Complex, and Advanced Night Repair Eye Serum Infusion (collectively, "ANR Products") have certain age-negating effects on human skin.

3.    Estee Lauder's primary marketing message for the ANR Products collectively focuses on "groundbreaking DNA research into 'clock genes,'" which purportedly led to the discovery of "Chronolux Technology," described as an "advanced recovery complex" which is said to help the skin "continuously repair the appearance of past damage," while also "building a rich reserve of anti-oxidants and lipids" to help "replenish skin's natural protectants."  According to Estee Lauder's marketing, the ANR Products are "[i]nspired by 30 years of groundbreaking DNA research," and they "bring[] you the most comprehensive, high-performance anti-aging formulas we have ever created.  Think of them as 'insurance' for younger, healthier-looking skin.  Today and tomorrow."  Estee Lauder also claims that the ANR Products can repair DNA damage.

4.    Estee Lauder's marketing strategy promoting the efficacy of the ANR Products presents a uniform message spanning the entire product line and echoes across all forms and media in which ANR Product marketing and advertising appears.  That is, regardless of whether the advertising for the ANR Products appears in print (magazine or newspaper), on Estee Lauder's website, on third-party retailer websites, on product brochures, product displays, or product

packaging at the point of sale, Estee Lauder repeats substantially the same thematic marketing message and efficacy claims for the ANR Products.

5.    The image shown below in this paragraph is that of the product insert accompanying the Advanced Night Repair Synchronized Recovery Complex, Advanced Night Repair Eye Synchronized Complex and, upon information and belief, Advanced Night Repair Eye Serum Infusion, and demonstrates that (a) Estee Lauder markets these products together as a collection and (b) maintains the consistency of its themes of DNA repair, "clock genes," and "Chronolux Technology," among others, throughout the collection.



## Advanced Night Repair Collection

**ENVIRONMENTAL ASSAULTS EQUAL DNA DAMAGE**
All day, every day, your skin is assaulted by stresses from the environment, including the sun's aging rays and even emotional stresses of modern life. All of which cause damage to skin cells and their DNA that can surface later as lines, wrinkles, sagging and age spots. And now, research shows today, more than ever before, aging assaults from pollution can cause significant damage to skin's appearance.

**THE SCIENCE OF CLOCK GENES**
Working extensively with a leading, independent research team, Estée Lauder scientists are among the first to understand the importance of a specific group of genes known as "clock genes." This pivotal research showed that "clock genes" regulate a series of precisely timed repair responses within each skin cell to help maximize its DNA repair. With age and repeated exposure to environmental stresses, skin's "clock genes" become de-synchronized, causing its repair and protective processes to slow down.

**TOMORROW'S TECHNOLOGY, TODAY.**
Inspired by 30 years of groundbreaking DNA Research, Estée Lauder brings you the most comprehensive, high-performance anti-aging formulas we have ever created. Think of them as "insurance" for younger, healthier-looking skin. Today and tomorrow.

**Advanced Night Repair**
Synchronized Recovery Complex
Uniquely formulated to work in a way no other treatment can, this patented* complex is advanced with our exclusive **Chronolux™ Technology**. So innovative, so effective, this remarkable recovery complex actually supports the natural synchronization of skin's repair and protection processes. Its mission? Repair the appearance of past damage and address the damaging effects of environmental assaults before they become permanent.

Use it every day to help continuously repair the appearance of past damage, help prevent future damage and deliver high levels of hydration:

**CONTINUOUS REPAIR**
Supports skin's natural repair process—critical for its well-being. When used every day, this advanced complex helps skin continuously repair the appearance of past damage caused by every major environmental assault—UV light, smoke, pollution, even emotional stress. Over time, you'll see a dramatic reduction in the appearance of wrinkles, dehydration and discoloration.

**CONTINUOUS PREVENTION**
Neutralizes up to 90%** of environmentally generated free radicals before they can damage skin's appearance. Because research shows it is this environmental damage—not time—that can cause the most significant visible signs of aging. Soothes daily irritation and builds a rich reserve of anti-oxidants and lipids to help replenish skin's natural protectants.

**CONTINUOUS HYDRATION**
Delivers high levels of long-proven Hyaluronic Acid to create the optimal conditions your skin needs to maximize its natural repair processes. In fact, known as nature's "moisture magnet", Hyaluronic Acid has been found to attract 1,500 times its weight in water. And, clinical tests prove these levels of moisturization increase dramatically, cumulatively with continued use.

* 20+ Patents Worldwide.
** In vitro testing.

To use: Apply several drops all over cleansed face and throat.
Follow with the Estée Lauder moisturizer that's right for you.

**Advanced Night Repair for Eyes**
Two revolutionary eye formulas with all of the repair and protection of Advanced Night Repair face serum. See a dramatic reduction in the look of every key visible sign of eye aging—fine lines, wrinkles, puffiness, dark circles, dryness and uneven skintone.

**ENHANCED REPAIR**
Because skin around your eyes is about 4X thinner than anywhere else on your face, it's more vulnerable to environmental damage. It is also where you'll see the signs of aging to be the most exaggerated. Our exclusive Chronolux™ Technology helps skin optimize its natural repair processes to **reduce the look of the fine lines and wrinkles** that can appear first around your eyes.

**ENVIRONMENTAL REPAIR**
The damaging effects of daily UV light, smoke, pollution and even emotional stress can accelerate every key visible sign of aging. These exclusive formulas **continuously repair the appearance of past damage** caused by every one of these major assaults. Keeps the entire eye area looking fresher, rested and revitalized.

**PREVENTION AND HYDRATION**
Advanced Night Repair Eye creates the optimal environment to keep your eyes looking younger, healthy and radiant. Hyaluronic Acid helps skin lock in moisture and strengthen its protective moisture barrier. Powerful anti-oxidants help neutralize environmentally generated free radicals before they can cause future damage. Plus, high levels of soothing anti-irritants and targeted technologies help **reduce the look of dark circles, puffiness and crepiness** for brighter, smoother skin around the eyes.

**Advanced Night Repair Eye**
Synchronized Complex
This silky, gel creme leaves the entire eye area cushioned and comfortable.

To use: Simply dip the ball of the applicator into the jar and apply 3 tiny dots to each cleansed eye area AM and PM. Blend gently around the eye with ring finger. Rinse applicator after each use.

**Advanced Night Repair Eye**
Serum Infusion
This fast-penetrating, lightweight serum leaves the eye area soothed and refreshed.

To use: Apply AM and PM to clean skin around eye area. Ideal under your targeted eye creme.

For All Skintypes.
Dermatologist-tested. Ophthalmologist-tested.

> **A Word about Quality**
> Every Estée Lauder formula has undergone stringent evaluation for ingredient integrity, non-irritancy and overall efficacy. At Estée Lauder, our promise is to provide you with the very best in research, technology and quality.

6.     Estee Lauder's ANR marketing strategy is also designed to create a

uniform look and theme for all of its ANR Products.  For example, Estee Lauder

4

uses the same images and graphics (*e.g.,* the image of a DNA helix) and color scheme across all of its product advertising and packaging and rarely differentiates between products in its advertising materials, frequently referring simply to "Advanced Night Repair."  The ANR marketing campaign also frequently includes more than one ANR Product in the advertisements and Estee Lauder presents all the ANR Products as providing the same DNA-based efficacy.

7.     Estee Lauder admits in its public filings, such as its 2012 10-K, that it implements a uniform marketing strategy for each of its product lines, including the ANR Products, by telling its investors that each of its product lines, including ANR, "has a single global image, and is promoted with consistent logos, packaging and advertising designed to enhance its image and differentiate it from other brands."

8.     As explained more fully herein, Estee Lauder has made, and continues to make, deceptive, false or misleading claims and promises to consumers about the efficacy of its ANR Products in a pervasive, nation-wide marketing scheme that deceives and misleads consumers about the ANR Products.  In reality, the ANR Products do not and cannot live up to the specific age-negating promises made by Estee Lauder because none of their ingredients can provide the promised results.

9.     Estee Lauder knows this, yet designs its marketing and advertising campaign for the ANR Products to focus on misleading indicia of scientific support for the efficacy claims made, as Estee Lauder routinely refers to its research, discovery, and testing of the ANR Products.  Such a focus on scientific references and terms throughout its advertising and marketing materials further deceives

5

consumers.  Estee Lauder does so with one goal in mind – reaping enormous profits at the expense of consumers.

10.     Indeed, the primary reason consumers purchase the ANR Products is to obtain the unique results that Estee Lauder promises.

11.     Despite these representations concerning scientific research and discovery, Estee Lauder's financial reports reveal a very different story and illustrate that the company commits an overwhelming amount of its resources to marketing.  For example, according to its public filings, in 2012, Estee Lauder spent more than $2.65 *billion* on marketing while it only spent $96.5 million on research and development – a ratio of more than twenty-seven to one.

12.     A direct effect of Estee Lauder's marketing campaign for the ANR Products is that consumers across the country, including Plaintiff and the other members of the proposed Class and the NY Subclass, suffered financial harm due to Estee Lauder's false, deceptive or misleading misrepresentations when they purchased skin-care products that do not, and cannot, provide the results Estee Lauder promises.

13.     Estee Lauder sells the ANR Products to consumers in a different manner than less expensive wrinkle creams or moisturizers are sold, which affects the manner in which Plaintiff and the other members of the Class and NY Subclass are exposed to the false or deceptive claims.

14.     While lower-priced cosmetic products are available on the shelves of drug stores and supermarkets, the ANR Products are sold mainly over counters at

high-end department stores or online on Estee Lauder's website. Estee Lauder salespersons, who act as Estee Lauder agents, are trained and compensated by Estee Lauder to sell its ANR Products. These salespersons staff the counters at retail department stores, including the Macy's department store on Staten Island at which Plaintiff purchased ANR Products, and are trained to impart the same efficacy messages as appears in Estee Lauder's other advertising and marketing materials. Estee Lauder also provides consumers with product displays and sales brochures at the point of sale that restate the same efficacy promises made in its other forms of advertising.

15.     Accordingly, instead of making a side-by-side comparison of product packaging on store shelves, consumers of the ANR Products decide to purchase these products almost exclusively by virtue of marketing campaigns that reach consumers before they enter the retail outlets (*i.e.*, print media advertisements, television commercials or Internet marketing) and through the counter sales and advertising displays, such as those pictured below:



16.     Indeed, Estee Lauder states in its public filings, such as its 2012 10-K, that its "in-store displays are designed to attract new customers and introduce existing customers to different products in the line."

17.     Plaintiff and the other members of the Class and NY Subclass were exposed to Estee Lauder's pervasive deceptive and misleading advertising messages and material omissions regarding the efficacy promises of the ANR Products.   Had Estee Lauder's marketing and advertising materials truthfully represented the efficacy of the ANR Products, Plaintiff and the other Class and NY Subclass members would not have purchased the ANR Products, or would have paid substantially less for those products than they did, in fact, pay.

18.     Plaintiff seeks relief in this action individually and on behalf of all purchasers in the United States of at least one of the ANR Products ("the Class") at any time from the date of product launch for each of the particular ANR Products to the present (the "Class Period") for breach of contract.   Plaintiff also seeks relief individually and on behalf of a subclass of residents of her home state of New York (the "NY Subclass") for violation of New York General Business Laws §§ 349, 350, and for breach of contract.   Pending completion of discovery, Plaintiff may seek leave to amend the definitions of the Class and/or NY Subclass and/or to add additional subclasses.

## JURISDICTION AND VENUE

19.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 class members and the aggregate amount

in controversy exceeds $5 million exclusive of interest, fees, and costs, and at least one Class member is a citizen of a state different from Defendant.

20.     Pursuant to 28 U.S.C. § 1391, venue is proper in this Court because Defendants conduct business in this District and a substantial part of the events, omissions and acts giving rise to the claims herein occurred in this District.

## THE PARTIES

21.     Plaintiff Donna Tomasino is a citizen of the State of New York, residing in Richmond County.

22.     Defendant, The Estee Lauder Companies Inc., is a Delaware corporation with its principal place of business in New York, New York.

23.     Defendant Estee Laboratories, LLC is a Delaware limited liability company.  Upon information and belief, Estee Laboratories LLC is a wholly owned subsidiary of The Estee Lauder Companies Inc.

24.     Defendant Estee Lauder Inc. is a Delaware corporation with its principal place of business in New York.

## PLAINTIFF-SPECIFIC ALLEGATIONS

25.     In January 2011, Plaintiff purchased Estee Lauder's Advanced Night Repair Synchronized Recovery Complex and Estee Lauder's Advanced Night Repair Eye Synchronized Complex from an Estee Lauder sales counter located in a Macy's department store on Staten Island, New York at full retail cost[1] during the Class

---

[1] The prices Estee Lauder charges for its ANR Products are as follows: Synchronized Recovery Complex, $62 for 1 oz; Synchronized Recovery Complex II,

Period, for personal use. Plaintiff paid approximately $62 for Advanced Night Repair Synchronized Recovery Complex and approximately $55 for the Advanced Nigh Repair Eye Synchronized Complex.

26.     Prior to her purchases, Plaintiff saw, read, and received Estee Lauder's marketing claims for the ANR Products in magazines, including Elle, Vogue, Town & Country and Harper's Bazaar and at the Estee Lauder sales counter at Macy's — the point of sale. The false and misleading efficacy claims made by Estee Lauder that Plaintiff received and considered in deciding whether to purchase Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex concerned those products' abilities to repair DNA damage, reduce wrinkles, and confer other, specific age-negating benefits. Plaintiff relied on those promises in making her decision to purchase Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex.

27.     Specifically, the efficacy statements relied on by Plaintiff in her purchase of Advanced Night Repair Synchronized Recovery Complex include, among other things, claims that the product would "repair past visible DNA damage," visibly reduce wrinkles by 68%, and "neutralize[] up to 90%** of environmentally generated free radicals before they can affect skin's appearance. ** In vitro testing." Plaintiff's decision to purchase Advanced Night Repair

---

$62 for 1 oz; Eye Synchronized Complex, $55 for 0.5 oz; Eye Serum Infusion, $62 for 15 ml.

Synchronized Recovery Complex was also influenced by the purported "scientific" support, "in vitro testing," and references to new technologies like "Chronolux Technology" and "AGT Repair Technology."

28.     The specific efficacy statements relied on by Plaintiff in her purchase of Advanced Night Repair Eye Synchronized Complex include, among other things, claims that the product contains "all of the repair and protection of Advanced Night Repair face serum" (*i.e.*, Advanced Night Repair Synchronized Recovery Complex (see paragraph 28 above) — a product Defendants market as providing "a dramatic reduction in major visible signs of aging" such as lines and wrinkles); "neutralize[s] environmentally generated free radicals before they can cause future damage"; and "continuously repair[s] the appearance of past damage."

29.     The foregoing statements received and considered by Plaintiff both prior to and at the time of her purchases were material and influenced her decision to buy Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex.  Further, had Estee Lauder not omitted material facts as described herein and instead disclosed the true nature of the ANR Products, Plaintiff would not have purchased the ANR Products, or would have paid substantially less for those products than she did, in fact, pay.

30.     As a result of the statements made by Defendants, Plaintiff expected certain benefits from her use of the Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex, including that

11

such use would result in the repair of the past DNA damage to her skin and a visible reduction of wrinkles by 68%.

31.    Plaintiff used the Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex applying each to her skin nightly as directed by the packaging materials that accompanied the Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex she purchased.

32.    Plaintiff did not obtain the promised results from her use of Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex. In particular, Plaintiff experienced no visible reduction in wrinkles and no indicia of DNA repair.

33.    Plaintiff would not have purchased Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex had Estee Lauder not made such promises regarding wrinkle reduction and DNA repair and instead disclosed the true nature of its products.

## GENERAL FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

### Estee Lauder's Misleading Efficacy Claims for ANR Products

34.    Estee Lauder's marketing for its ANR Products is designed to convey a message of DNA repair and wrinkle reduction based upon new discoveries. Indeed, the ANR marketing materials claim that the ANR Products are "[i]nspired by the science of clock genes," and that the Company's "exclusive Chronolux and AGT

Repair Technologies support the natural synchronization of skin's repair processes so that it repairs itself at exactly the right time."

35.     Estee Lauder similarly claims throughout its marketing materials (including website, magazine advertisements, and online videos) that ANR Products are formulated based on DNA research, explains to consumers its "DNA Science In Depth," and conveys the misleading message that ANR Products can "repair DNA damage":







36.    In addition to the screen shots above from the ANR page on the esteelauder.com website, the product inserts for all of the ANR Products (see paragraph 6, *supra*), which are included in the packaging materials provided in the sale of each ANR Product, parrot these same messages and claims of DNA repair:

> Working extensively with a leading independent research team, Estee Lauder scientists are among the first to understand the importance of a specific group of genes known as "clock genes."  This pivotal research showed that "clock genes" regulate a series of precisely timed repair responses within each skin cell to help maximize its DNA repair.

37.    Estee Lauder's references to genetic research, skin cell behavior and DNA repair unambiguously convey the message to consumers that using the ANR Products will repair damage to their skin cells and repair their DNA.

38.    Indeed, even the name of the ANR Products themselves – Advanced Night *Repair* – carries through and delivers this consistent "repair" message because of the clear intent by Estee Lauder to sell these ANR Products based on their purported ability to repair past DNA damage.

39.    The product insert for each of the ANR Products (see paragraph 6, *supra*) further reinforces the efficacy claims and corresponding scientific references made by Estee Lauder with the promise that "overall efficacy" is supported by "stringent evaluation":

> A Word about Quality – Every Estee Lauder formula has undergone stringent evaluation for ingredient integrity, non-irritancy and *overall efficacy*.  At Estee Lauder, our promise is to provide you with the very best in research, technology and quality.

(Emphasis added.)

40.     The promises of "stringent evaluation" for overall efficacy are deceptive because, as explained herein, (1) the tests and studies conducted by Estee Lauder to support the pre-determined efficacy claims do not amount to scientifically reliable tests because they are subjective, outcome oriented and are not scientifically reliable, and (2) the ANR Products' ingredients have none of the benefits Estee Lauder claims for them.  In other words, the representation that the ANR Products' efficacy is supported by stringent scientific testing is misleading or deceptive because consumers expect such tests to be scientifically reliable, when, in fact, Estee Lauder's tests are not, and because other data shows that the efficacy claims Estee Lauder makes are simply untrue.

**Why Estee Lauder's Efficacy Claims are Misleading:**

41.     There are numerous biological and physiological reasons **why** the ANR Products cannot and do not work as promised for any consumers:

42.     A major function of the skin is to provide protection from physical and environmental assaults. These stressors come in many forms such as solar radiation, infection, temperature extremes, dehydration, and mechanical trauma. The skin also possesses and mediates immune, endocrine, and neural functions. All of these functions decline with age.

43.     The outermost layer of the skin, the epidermis, is composed of multiple layers that are important to its barrier function:  the *stratum corneum*, *stratum granulosum*, *stratum spinosum*, and *stratum basale*.  The purpose of the *stratum*

16

*corneum* is to form a barrier to protect underlying tissue from infection, dehydration, chemicals, and mechanical stress.

44.     Photoaging refers to the effects of long-term UV exposure (UVA and UVB) and sun damage superimposed on intrinsically aged skin. UV radiation has numerous direct and indirect effects on the skin. It is estimated that approximately 50% of UV-induced damage is from the formation of free radicals, whereas direct cellular injury and other mechanisms account for the remainder of UV effects.

45.     UVB-induced DNA mutations occur by chemical change and include cyclobutane pyrimidine dimers and (6-4) photoproducts formed between adjacent pyrimidine bases. These DNA mutations are clinically related to specific signs of photoaging as wrinkling, increases in elastin and collagen damage.

46.     UVA, and to a lesser extent UVB, damage DNA indirectly through the generation of reactive oxygen species (ROS). ROS damages cellular DNA as well as lipids and proteins. Numerous endogenous mechanisms protect the skin from UV-induced damage. These include increased epidermal thickness, pigment DNA repair mechanisms, apoptosis, tissue inhibitors of metalloproteinase, and antioxidants. With UV-induced DNA damage, p53 transcription is activated and the cell is arrested in G1 phase to allow for DNA repair. UV-induced mutations such as cyclobutane pyrimidine dimers and (6-4) photoproducts are repaired by endogenous mechanisms such as the nucleotide excision repair system. If the damage is too severe, apoptosis (programmed cell death) may occur. Most studies

on UVA photoprotection have been performed in vitro and still require intensive investigation and proof of UVA protective agents especially in vivo.[2]

47.     The skin is equipped with enzymatic as well as nonenzymatic cutaneous antioxidants. Endogenous antioxidants include vitamin E, coenzyme $Q_{10}$ ($CoQ_{10}$), ascorbate, and carotenoids, whereas enzymatic antioxidants include superoxide dismutase, catalase, and glutathione peroxidase. These provide protection from ROS produced during normal cellular metabolism. Excessive exposure to UV radiation is thought to overwhelm and deplete this antioxidant supply, thereby leading to a state of oxidative stress.

48.     Although many antioxidants have shown substantive efficacy in cell culture systems and in animal models of oxidant injury, the topical application of antioxidants is not beneficial in the prevention of DNA damage in part due to the molecular instability of the compounds and low bioavailability.  In fact, studies have specifically shown that topical application of tocopheryl acetate, one of the ingredients in Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex, does not result in an antioxidant effect and does not prevent photodamage as a result of skin exposure to UV light.[3]  The low to zero antioxidant activities in the products studied suggest

---

[2] Svobodová A, Vostálová J. Solar radiation induced skin damage: review of protective and preventive options. Int J Radiat Biol. 2010 Dec;86(12):999-1030. doi: 10.3109/09553002.2010.501842. Epub 2010 Sep 1. Review. PubMed PMID: 20807180.

[3] *See, e.g.*, Wang SQ, Osterwalder U, Jung K. Ex vivo evaluation of radical sun protection factor in popular sunscreens with antioxidants. J Am Acad Dermatol.

that the antioxidants in those products offer no contribution for ROS protection. Moreover, while free but unstable forms are effective, their more stable derivatives (esters) are less or not at all effective in UV protection.  For example, a stable derivative of vitamin E, alpha-tocopherol acetate, was found to be not converted to alpha-tocopherol in the skin and this resulted in its ineffective protection against DNA photoproduct formation.[4]

49.    Estee Lauder claims that Advanced Night Repair Synchronized Recovery Complex "helps neutralize up to 90%**of environmentally-generated free radicals before they can damage skin's appearance."  The asterisk refers to an "in-vitro" test.  "In-vitro" is Latin for "in glass" and it refers to results that are based on ingredient testing in a test tube or petri dish, which means that the ingredients' ability to penetrate actual human skin cannot be assessed.  Indeed, recent studies suggest that in-vitro testing is particularly insufficient to support drug and cosmetic efficacy claims because such tests fail, by design, to take account of the resistance of the "viable epidermis," a layer of skin beneath the *stratum corneum*.[5]  The *stratum corneum* is composed of "dead flattened corneocytes that are surrounded by a lipid

---

[4] Svobodová A, Vostálová J. Solar radiation induced skin damage: review of protective and preventive options. Int J Radiat Biol. 2010 Dec;86(12):999-1030. doi: 10.3109/09553002.2010.501842. Epub 2010 Sep 1. Review. PubMed PMID: 20807180.

2011 Sep;65(3):525-30. doi: 10.1016/j.jaad.2010.07.009. Epub 2011 May 31. PubMed PMID:21624700.

[5] *See, e.g.*, S.N. Andrews, E. Jeong, M.R. Prausnitz, "Transdermal delivery of molecules is limited by full epidermis, not just stratum corneum," *Pharm. Res.* 30: 1099-1109 (2013).

extra-cellular matrix," and is the only layer studied in in-vitro testing.[6]  The full epidermis is comprised of the *stratum corneum* and the viable epidermis, the latter of which is "a cellular, avascular tissue measuring 50-100 [micrometers] thick."[7] Because "successful transdermal drug [or cosmetic] delivery typically involves drug [or cosmetic ingredient] transport across the epidermis to the superficial dermal capillary bed," *id.*, it is impossible to investigate the effects of the ingredients in Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex at the cellular level using in-vitro testing.  Estee Lauder is well aware of this reality yet continues to represent to consumers that "in-vitro" results translate to results in actual human skin.

50.    DNA damage sustained via direct or indirect injury cannot be repaired by antioxidants or by topically applied enzymes, such as AGT (Alkyl Guanine Transferase), but requires the action of endogenous enzymatic repair mechanisms as mentioned above. Likewise, programmed cell death (apoptosis) triggered by extensive DNA damage cannot be stopped or reversed in any way.

51.    As a result, and by virtue of the process by which DNA is damaged, no antioxidant or other topically applied over-the-counter cream or serum can repair past DNA damage.  The function of antioxidants is to prevent damage that would otherwise occur as a result of ROS, and they cannot and do not repair past DNA damage that has already occurred.

---

[6] *Id.* at 1.

[7] *Id.*

52.     In other words, the process by which direct DNA damage occurs combined with the cellular response to such damage means that topical creams or serums such as Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex cannot address or reverse such DNA damage.

53.     Further, topical applications of creams or serums such as Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex cannot permanently influence existing wrinkles, which have evolved as a result of intrinsic aging and photodamage sustained over a lifetime.

54.     Disturbances of skin barrier function, such as in atopic dermatitis or rosacea, lead to an increase in transepidermal water loss (TEWL), a decrease in water-binding properties, and a reduction in skin surface lipids, specifically levels of ceramides (*i.e.*, dry skin).  The results of clinical studies suggest that some of these deficits can be addressed through the judicious use of appropriate moisturizers, which have been shown to improve skin hydration, reduce susceptibility to irritation, and restore the integrity of the *stratum corneum*.

55.     A multitude of products have been developed to treat dry skin, and as a group, moisturizers have been designed to either impart or restore hydration in the *stratum corneum*.  As a biosensor, the *stratum corneum* will temporarily change its structure in response to moisturizing and a swelling effect has been clearly demonstrated by skin hydration. The visible result of this is a smoother and plumper skin surface with reduction in the appearance of fine lines and wrinkles

due to the transient engorgement effect on the corneocytes (the cells that compose the *stratum corneum*). As the effect of the moisturizer wears off (within several hours after application or if it is washed off), the appearance of the skin will resume its prior state.  In other words, moisturizing the skin will make wrinkles less visible for a short period of time (but not reduced in presence) entirely due to the transient plumping effect of hydrating the otherwise dry corneocytes. As the skin dries out again, *i.e.*, as the moisturizing effect wears off, the wrinkles will be unchanged from their steady state.

56.    While Estee Lauder's Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex both contain "skin conditioners" and "emollients," ingredients that can provide a moisturizing effect, Estee Lauder does not advertise Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex as mere moisturizers.  Rather, Estee Lauder promises significant visible reductions in wrinkles and repair of past DNA damage.  As explained above, these purported benefits are impossible with topical application of a cream or serum.

57.    Likewise, probiotic ingredients, like Bifida Ferment Lysate, an ingredient in both Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex, cannot repair DNA damage or reduce wrinkles.  Probiotics have been defined as 'live microbial feed supplements that beneficially affect the host health by improving the intestinal balance'. Probiotics are included in foods or dietary supplements and are aimed at

22

functioning in the intestine.  Strains that are adherent to human keratin, the main skin protein, can be identified, but this does not make those probiotics effective in repairing DNA or reducing wrinkles.  For example, the sensitivity of members of the genus *Bifidobacterium*, of which Bifida Ferment Lysate is a member, to $O_2$ limits probiotic activity to anaerobic habitats (*e.g.*, the gut).  The topical effects of Bifida Ferment Lysate, if any, are limited to decreasing the sensitivity of the skin.[8] Indeed, because of the processes required for repairing DNA and reducing wrinkles explained above, and because of the sensitivity of active probiotics to $O_2$, no probiotics, including Bifida Ferment Lysate, can repair DNA damage or reduce wrinkles.  Finally, all data that semi-active or nonreplicating bacteria preparations retained activities comparable to the live forms of bacteria pertain to the intestinal environment (not the skin) in current peer reviewed medical literature.[9]

58.     Peptides, another type of ingredient in both Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex, are amino acids that can, in some circumstances, encourage limited production of preliminary phases of collagen and elastin (*e.g.*, procollagen) when applied topically.  However, only prescription retinoids have an effect on wrinkles.  Tretinoin was the first retinoid approved by the FDA to treat wrinkles.  This

---

[8] Ouwehand AC, Båtsman A, Salminen S. Probiotics for the skin: a new area of potential application? Lett Appl Microbiol. 2003;36(5):327-31. PubMed PMID: 12680947.

[9] Galdeano C M, Perdigon G. Role of viability of probiotic strains in their persistence in the gut and mucosal immune stimulation. J Appl Microbiol 2004: 97: 673–681.

prescription retinoid works by increasing the production of new collagen.  It also stimulates new blood vessels in the skin, giving skin a rosy appearance, fading age spots, and reducing precancerous skin spots called actinic keratosis.  Tretinoin also may help prevent more serious effects of ultraviolet radiation.  To see any such benefits of using prescription retinoids takes months, if not years, of regular, daily use.

59.    Neither Advanced Night Repair Synchronized Recovery Complex nor Advanced Night Repair Eye Synchronized Complex contains any retinoid ingredient, prescription strength or otherwise.

60.    Accordingly, as discussed above, none of the ingredients in Advanced Night Repair Synchronized Recovery Complex are able to repair DNA damage or permanently reduce wrinkles when applied topically.  As the following chart demonstrates, each of the ingredients that are included for Estee Lauder's claimed efficacious benefit (as opposed to those present for stability or aesthetics) are of the type described above (antioxidant, probiotic, peptide, skin conditioner, emollient) that do not have, alone or in combination, any DNA repair ability or the ability to permanently reduce wrinkles:

| Ingredient | Use | Potentially Efficacious Yes or No | Ability to Repair DNA or Permanently Reduce Wrinkles |
|---|---|---|---|
| Water | Solvent | No | No |
| Bifida Ferment Lysate | Probiotic/ Antioxidant | Yes | No |

| Methyl Gluceth-20 | Humectant | No | No |
|---|---|---|---|
| PEG-75 | Humectant | No | No |
| Butylene Glycol | Solvent | No | No |
| Bispeg-18 Methyl Ether Dimethyl Silane | Surfactant | No | No |
| Arabidopsis Thaliana Extract | Antioxidant | Yes | No |
| Tripeptide-32 | Peptide | Yes | No |
| Ethylhexyl Methoxycinnamate | Sunscreen (UVB) | Yes | No |
| Lactobacillus Ferment | Probiotic / Antioxidant | Yes | No |
| Cola Acuminata (Kola) Extract | Skin conditioner | Yes | No |
| Pantethine (Vitamin B5) | Skin conditioner | Yes | No |
| Caffeine | Antioxidant | Yes | No |
| Glycereth-26 | Emollient | Yes | No |
| Triethanolamine | Surfactant, pH adjuster | No | No |
| Sodium RNA | Skin conditioner | Yes | No |
| Squalane | Skin conditioner, Emollient | Yes | No |
| Oleth-3 Phosphate | Surfactant, Emulsifier | No | No |
| Oleth-3 | Surfactant, Emulsifier | No | No |
| Oleth-5 | Surfactant, Emulsifier | No | No |
| Bisabolol | Skin conditioner | Yes | No |
| Choleth-24 | Surfactant, Emulsifier | No | No |
| Ceteth-24 | Surfactant, Cleansing agent | No | No |
| Hydrogenated Lecithin | Emulsifier, Emollient, Skin | Yes | No |

| | | | |
|---|---|---|---|
| | conditioner | | |
| Anthemis Nobilis (Chamomile) | Antioxidant | Yes | No |
| Sodium Hyaluronate | Humectant, Skin conditioner | Yes | No |
| Tocopheryl Acetate | Antioxidant | Yes | No |
| Lecithin | Emulsifier, Emollient, Skin conditioner | Yes | No |
| Xanthan Gum | Thickener, Emulsifier | No | No |
| Carbomer | Thickener | No | No |
| Trisodium EDTA | Penetration enhancer | No | No |
| BHT | Preservative | No | No |
| Phenoxyethanol | Preservative | No | No |
| Methylparaben | Preservative | No | No |
| Benzyl Alcohol | Preservative, Solvent | No | No |
| Green 5 (CI 61570) | Color additive | No | No |
| Yellow 5 (CI 19140) | Color additive | No | No |
| Red 4 (CI 14700) | Synthetic colorant | No | No |

61.    Similarly, none of the potentially efficacious ingredients in Advanced Night Repair Eye Synchronized Complex are able to repair DNA damage or permanently reduce wrinkles when applied topically.   As the following chart demonstrates, each of the ingredients that are included for Estee Lauder's claimed efficacious benefit (as opposed to those present for stability or aesthetics) are of the same type described above (antioxidant, probiotic, peptide, skin conditioner, emollient) that do not have, alone or in combination, any DNA repair ability or the ability to permanently reduce wrinkles:

| Ingredient | Use | Purportedly Efficacious Yes or No | Ability to Repair DNA or Permanently Reduce Wrinkles |
|---|---|---|---|
| Water | Solvent | No | No |
| Methyl Trimethicone | Emollient | Yes | No |
| Bifida Ferment Lysate | Probiotic/ Antioxidant | Yes | No |
| Dimethicone | Skin protectant | No | No |
| Dimethicone/Vinyl Dimethicone Crosspolymer | Viscosity increasing agents | No | No |
| Isopentyldiol | Solvent | No | No |
| Petrolatum | Skin protector | No | No |
| Sucrose | Humectant | No | No |
| Glycine Soja (Soybean) Seed Extract | Antioxidant, Emollient | Yes | No |
| Morus Nigra (Mulberry) Root Extract | Skin conditioner | Yes | No |
| Scutellaria Baicalensis Root Extract | Antioxidant | Yes | No |
| Hordeum Vulgare (Barley) Extract/Extrait D'Orge | Emollient, Skin conditioner | Yes | No |
| Triticum Vulgare (Wheat) Germ Extract | Skin conditioner | Yes | No |
| Caffeine | Antioxidant | Yes | No |
| Vitis Vinifera (Grape) Fruit Extract | Antioxidant | Yes | No |
| Algae Extract | Emollient, Skin conditioner | Yes | No |
| Betula Alba (Birch) Extract | Astringent, Fragrance | No | No |
| Poria Cocos Sclerotium Extract | Astringent | No | No |
| Arabidopsis Thaliana Extract | Antioxidant | Yes | No |
| Lactobacillus Ferment | Probiotic/ Antioxidant | Yes | No |
| Anthemis Nobilis | Antioxidant | Yes | No |

| (Chamomille) | | | |
|---|---|---|---|
| Yeast Extract/Faex/Extrait De Levure | Skin conditioner | Yes | No |
| Polysorbate 40 | Surfactant | No | No |
| Sodium Hyaluronate | Humectant, Skin conditioner | Yes | No |
| Trehalose | Skin conditioner | Yes | No |
| Jojoba Alcohol | Emulsifier, Skin conditioner | Yes | No |
| Isopropyl Jojobate | Skin conditioner, Emollient | Yes | No |
| Isohexadecane | Skin conditioner, Emollient, Solvent | Yes | No |
| Jojoba Esters | Emollient, Antioxidant | Yes | No |
| Peg-PPG-18/18 Dimethicone | Emulsifier | No | No |
| Cholesterol | Emollient, Skin conditioner, and Viscosity increasing agent | Yes | No |
| Butylene Glycol | Solvent | No | No |
| Polysorbate 80 | Solvent, Emulsifier | No | No |
| Ethylhexylglycerin | Skin conditioner | Yes | No |
| Tocopheryl Acetate | Antioxidant | Yes | No |
| Acrylates/C10-13 Alkyl Acrylate Crosspolymer | Film forming, Emulsion stabilizing, Viscosity controlling | No | No |
| Linoleic Acid | Emollient | Yes | No |
| Sodium RNA | Skin Conditioner | Yes | No |
| Tromethamine | Fragrance, | No | No |

| | Buffering agent, and Masking ingredient | | |
|---|---|---|---|
| Squalane | Skin conditioner, Emollient | Yes | No |
| Acrylamide/Sodium Acryloyldimethyltaurate Copolymer | Stabilizer, Thickener | No | No |
| Hydrogenated Lecithin | Emulsifier, Emollient, Skin conditioner | Yes | No |
| Phytosphingosine | Water-binding agent with preservative qualities | No | No |
| Potassium Sulfate | Thickening agent | No | No |
| Tripeptide-32 | Peptide | Yes | No |
| Phenoxyethanol | Preservative | No | No |
| BHT | Preservative | No | No |
| Iron Oxides (Cl 77491, Cl 77492, Cl 77499) | Coloring agent | No | No |

62.     Again, to permanently reduce wrinkles or repair past DNA damage would require cellular manipulation, which the chemical properties of Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex's ingredients cannot achieve.  At most, Advanced Night Repair Synchronized Recovery Complex or Advanced Night Repair Eye Synchronized Complex may temporarily improve the appearance of wrinkles, as other cosmetic companies often state in promoting their own products, but Estee Lauder goes much further than most of its competitors by promising to repair past DNA damage and actually reduce wrinkles.

63. Indeed, even the Mayo Clinic recognizes that, "while many over-the-counter wrinkle creams and lotions promise to reduce wrinkles and prevent or reverse damage caused by the sun . . . these products are not likely to make a noticeable difference in your skin."

64. Thus, for reasons set forth in paragraphs 42 to 63, Plaintiff's experience with the ANR Products – which did not deliver the promised DNA repair and wrinkle reduction results – are the same for her as for every other purchaser of the ANR Products.

65. Even though Estee Lauder's claims are not supported by reliable science, Estee Lauder consistently uses scientific terms in its advertising for ANR Products to further deceive consumers. Estee Lauder routinely uses such phrases because it conducts in-depth consumer surveys and research showing that the use of these scientific phrases will increase consumer desire for the ANR Products. These scientific sounding phrases include such terms as "advanced technologies," "genes," "in vitro test," "DNA research," "DNA science in depth," "clinical improvement," "clinical study," and others, in order to convince consumers that the ANR Products contain unique ingredients which have been scientifically tested to provide the promised results. Such claims are further reinforced by Estee Lauder's "A Word About Quality" promises.

66. Estee Lauder also highlights its purported discovery of new ingredients and technologies which it claims not only make its products capable of

providing unique benefits, but also which support its efficacy claims, such as its "exclusive Chronolux™ Technology."

67.     In fact, while the use of such seemingly scientific terms and claims of ingredient discovery provide the ANR Products with an increased level of credibility among unsuspecting consumers, and therefore increased sales, the purportedly science-based claims are simply an extension of Estee Lauder's deceptive and misleading advertising campaign.

68.     Indeed, the "scientific" studies relied on by Estee Lauder are often conducted after it decides what efficacy claims to make based on market need and consumer desire.  These studies are therefore designed and carried out to support predetermined efficacy claims, and are not scientifically reliable studies because they are largely subjective and their outcomes are pre-determined.  As such, Defendants know that consumers will not experience the results these studies purportedly support because they were not carried out objectively.

**Misleading Use of Statistics**

69.     Another distinct way Estee Lauder deceives consumers is through its

misleading use of statistics.  For example, Estee Lauder presents the "results" of a

purported "clinical study" that it claims "proves skin gets better and better" in the

following manner on the "See The Proof" section of its website for ANR (and in its

ANR product brochures available at the point of sale):



70.     This graph purportedly illustrates the "results" of the "clinical study"

of ANR, wherein participants in the study saw a "68% Improvement" in "Lines and

Wrinkles" after twelve months of using ANR (there is no indication of which specific

ANR Product(s) was used in the "clinical study," though, based on the image above,

the product used was apparently Advanced Night Repair Synchronized Recovery

Complex, which Plaintiff purchased).

71.     Estee Lauder's use of small-print disclaimers does nothing to diminish

this specific efficacy claim of purported "68% Improvement" through ANR use.  The

32

first, single asterisk refers to "Clinical improvement over baseline." There is no information concerning what is meant by "clinical improvement" or what the "baseline" is.  Upon information and belief, the purported 68% improvement is based on the subjective impression of Estee Lauder testers, which is not scientifically reliable.

72.    The second, double asterisk, which appears twice in the graphical presentation and purportedly provides different information than the single asterisk, claims that the "improvement" is the "Clinical improvement of women using Advanced Night Repair compared to control panel of women, after twelve months."  There is no explanation for the difference between the "baseline" and the "control panel of women" or what "clinical improvement" is supposed to mean in this context, or any other information that would assist consumers in assessing the credibility of the 68% improvement claim.

73.    Accordingly, the message conveyed to consumers by this statistical presentation of the results of the "clinical study" is that consumers using ANR for twelve months can expect to see a "68%" reduction in their "Lines & Wrinkles."

74.    Because, as explained above, none of the ingredients in the ANR Products can actually permanently reduce lines and wrinkles by 68% (or any other percentage), this efficacy claim is deceptive and misleading.

75.    Estee Lauder invites consumers to "See the Proof."

76.    The "See the Proof" section on both its website and its printed marketing materials, which are on display at the point of sale, provides a series of

illustrations that purportedly "proves" that ANR Products perform as promised using the same deceptive statistical data:





77.     These graphical representations not only contain specific efficacy claims as to the results consumers can expect from their use of the ANR Products, but also claim that the improvements will get "better and better" the longer the products are used.  Estee Lauder uses the "better and better" promise to sway consumers into continued and repeated purchases of the ANR Products, despite the fact that Estee Lauder knows the promised "better and better" results will never materialize.

**The Effects of Defendants' Use of Scientific Data and Discovery**

78.     Making specific efficacy promises based upon "scientific" data and discovery further demonstrates that Defendants' claims are *not* mere puffery. Indeed, Estee Lauder's promises of repaired DNA damage, reduced lines and

wrinkles (by 68%), and the other age-negating effects Defendants represent that those products generate, are verifiable, reliable to reasonable consumers, and therefore actionable.

79.    Estee Lauder relies on promises of specific results purportedly supported by the indicia of scientific reliability and discovery (*e.g.*, studies, tests, and DNA discoveries) because it knows that such science-oriented promises and support for its efficacy claims render consumers more likely to believe the efficacy promises, and therefore more likely to purchase the premium-priced ANR Products.

80.    In addition, regardless of whether the "clinical" studies or other tests referenced by Estee Lauder produced the claimed results on paper, the references to such "clinical" studies or tests as being indicative of results for real-world consumers in actual use of the ANR Products is misleading and deceptive.  Indeed, this "data" is part and parcel of Estee Lauder's false, misleading, and/or deceptive advertising for its ANR Products because it is manufactured to fill a gap in the market identified by Estee Lauder's marketing team and consultants, not derived from objective and independent clinical research.

## Internet and Television Marketing

81.    Estee Lauder's Internet marketing for its ANR Products includes, among other things, video presentations, statistical data, and question and answer information on its own website, Esteelauder.com.  Many of its commercials and promotional videos are also readily accessible on youtube.com and on third-party websites such as Macys.com.  Each of these sources repeat the same central

marketing theme as the other ANR advertisements, and provides consumers access 24 hours a day, 7 days a week, to Estee Lauder's deceptive advertising campaign for the ANR Products.

**Print Media and Sales Brochures**

82.    Estee Lauder also markets its ANR Products in print media, including by placing advertisements in such widely circulated magazines and newspapers as the New York Times, Harpers Bazar, Vogue, W, Glamour, Cosmopolitan, Allure, and Elle, among others.

83.    The specific dates and places of publication of each of Estee Lauder's advertisements for the ANR Products are in Estee Lauder's possession, custody or control.

84.    Some of the examples of Estee Lauder's magazine advertising include the following, which demonstrate the uniform use of the double helix DNA strand, and regurgitate the same efficacy claims as the online and in-store marketing materials:

A.



B.



C.



85.    The above advertisement, ¶ 84(C), which appeared in Town & Country, includes a QR code.  When consumers scan the QR code with their mobile phones, they are taken to a video which further explains the product and acts as an extension of the ad.  This link to an online video provides an example of the uniformity of Estee Lauder's marketing campaign for the ANR Products across all media.

86.    Estee Lauder's sales brochures, which are made available at department stores where the ANR Products are sold, echo the same messages as the

other forms of Estee Lauder's marketing, including, but not limited to, the "better and better" promise, a promise of a "dramatic reduction in the major signs of visible aging – lines and wrinkles," repair of the visible effects of aging, statistics, such as the 68% improvement in lines and wrinkles claim, and references to DNA and repair.

**Sales Representatives**

87.     Estee Lauder disseminates uniform information to "Estee Lauder Beauty Advisors" regarding its ANR Products.  These sales representatives are paid by Estee Lauder and they are also extensively trained by Estee Lauder to parrot and reinforce the same promises, including DNA discoveries, DNA repair, and the other benefits of using the ANR Products, as contained in Estee Lauder's other forms of advertising.  Estee Lauder even sends its marketing and sales executives into the field to meet with consumers and key retailers and to consult with Estee Lauder Beauty Advisors at the points of sale.

88.     When purchasing Advanced Night Repair Synchronized Recovery Complex and Advanced Night Repair Eye Synchronized Complex, Plaintiff engaged with an Estee Lauder sales person at the Staten Island Macy's department store. The sales person repeated Estee Lauder's core marketing messages of DNA repair and wrinkle reduction.

**Estee Lauder's Use of Altered Images of Models in its Advertising**

89.    Estee Lauder makes further use of print, television and Internet advertising, wherein it touts the same purported benefits of its skin-care products using spokespersons who claim to exemplify the results of the ANR Products.

90.    What Estee Lauder fails to disclose is that the images of the spokespersons it uses are airbrushed, digitized, embellished, "Photoshopped" or otherwise altered and, therefore, contrary to the claims made by Estee Lauder, cannot and do not illustrate the effectiveness of the ANR Products.

91.    In sum, the images used by Estee Lauder to sell its ANR Products have nothing to do with the effectiveness (or lack thereof) of the ANR Products themselves and such use is itself likely to deceive consumers.

92.    Most recently, the National Advertising Division of the Council of Better Business Bureaus has recognized that such photo shopping is deceptive by proclaiming that "[a]dvertising self-regulatory authorities recognize the need to avoid photoshopping in cosmetics advertisements where there is a clear exaggeration of potential product benefits."

93.    Such deceptive use of altered images in their marketing of purportedly age-negating products only further illustrates the lengths to which Defendants will go to deceive its consumers in order to increase its profits.

**The Results of Estee Lauder's Deceptive Conduct**

94.    Estee Lauder's uniform marketing campaign leaves consumers with the mistaken belief that its ANR products are uniquely able to provide certain

40

permanent age-negating effects on human skin, including repair of damaged DNA and permanent reduction of wrinkles.

95.    In addition to the material misrepresentations as described herein, Defendants' actions are likewise actionable based on their material omissions, which similarly induced Plaintiff and the other members of the Class and NY Subclass to purchase the ANR Products.

96.    For example, Defendants have failed to disclose the following:

•    That none of the ANR Products' ingredients are unique;

•    That none of the ANR Products' ingredients can reduce wrinkles or repair DNA damage;

•    That none of the ANR Products' ingredients can reduce wrinkles or repair DNA damage because such effects are not attainable with non-prescription strength ingredients, including those contained in the ANR Products;

•    That Defendants' references to results from "in-vitro" tests will not translate to actual results for consumers, because such tests fail to take account of the resistance of the viable epidermis, and account only for the resistance of the *stratum corneum* or top-most layer of the skin;

•    That Defendants' "clinical studies" are not scientifically conducted and are instead designed to support Defendants' pre-determined marketing claims.

97.    Estee Lauder actually knows, or should know, that the promised results are not possible.  Estee Lauder fails to disclose that its ANR Products do not provide the permanent results as promised.

98.    Until such time as Estee Lauder ceases to engage in deceptive and misleading advertising of the ANR Products, Plaintiff and the other members of the Class and NY Subclass will continue to be harmed.

99.    Estee Lauder also is aware that, because of the aging population, consumers are increasingly susceptible to such deceptive marketing and advertising and that such marketing and advertising will continue to yield it ever-greater sales and profits.

100.   Indeed, it is for these precise reasons – increased sales and profits – that Estee Lauder spends millions of dollars to intentionally engage in its deceptive marketing and advertising campaign concerning the ANR Products.

101.   Estee Lauder has succeeded in its deceit and has in fact enjoyed massive profits from its deceptive campaigns.  Such enormous profits would not have been as large but for Estee Lauder's deceptive and misleading ANR marketing and advertising campaign.

102.   Estee Lauder sets the price and charges a premium for its ANR Products.  Plaintiff and the other members of the Class and NY Subclass would not have paid premium prices for the ANR Products – or would not have bought them at all – had they not been exposed to Estee Lauder's false or deceptive advertising

about the ANR Products and had, instead, known the truth regarding Estee Lauder's deceptive marketing promises and omissions relating thereto.

103. Moreover, Plaintiff and the other members of the Class and NY Subclass believed the ANR Products would provide the promised age-negating benefits as detailed herein. In reality, although Plaintiff and the other members of the Class and NY Subclass paid premium prices for these purportedly unique ANR Product benefits, they did not get what they paid for. Instead, the ANR Products that Plaintiff and the other members of the Class and NY Subclass purchased did not provide the promised age-negating results.

104. As a result, and because of Estee Lauder's deceptive marketing, Plaintiff and the other members of the Class and NY Subclass have been harmed as a result of their purchases of the ANR Products.

105. Without knowing the truth as to the lack of efficacy of the ANR Products, Plaintiff and the other members of the Class and NY Subclass paid premiums for ANR Products and/or received totally worthless products.

**CLASS ACTION ALLEGATIONS**

106. Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23 (a), (b)(1), (b)(2), and (b)(3) on behalf of the following nationwide consumer class (the "Class"):

> All purchasers of at least one of the ANR Products in the United States from date of product launch through trial (the "Class Period"). Excluded from the Class are Defendant, its parent, subsidiaries and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state or local governmental entities, any judicial officers

presiding over this action and the members of their immediate family and judicial staff, and any juror assigned to this action.

107.   Plaintiff also seeks to represent a New York Subclass defined as all residents of New York who purchased at least one of the ANR Products ("NY Subclass") during the Class Period.

108.   Members of the Class and the NY Subclass are so numerous that their individual joinder herein is impracticable.  Members of each of these classes number in the tens of thousands.  The precise number of Class and NY Subclass members and their identities are unknown to Plaintiff at this time but will be determined through discovery.   Class and NY Subclass members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendants and third-party sales people.

109.   Common questions of law and fact exist as to all Class and NY Subclass members and predominate over questions affecting only individual Class members.  Common legal and factual questions include, but are not limited to:

(a)   whether Defendants advertise or market the ANR Products in a way that is false or misleading;

(b)   whether Defendants concealed from Plaintiff and the other members of the Class and NY Subclass that their ANR Products do not provide the promised results;

(c)   whether, by the misconduct set forth in this Amended Complaint, Defendants engaged in unfair, fraudulent or unlawful business practices with respect to the advertising, marketing and sales of its ANR Products;

(d)   whether Defendants violated the New York Gen. Bus. Law §§ 349 & 350;

(e)     whether Defendants breached a contract with Plaintiff and the other members of the Class and NY Subclass because the ANR Products do not provide the promised results;

(f)     whether, as a result of Defendants' misconduct as alleged herein, Plaintiff and the other members of the Class and NY Subclass are entitled to restitution, injunctive and/or monetary relief and, if so, the amount and nature of such relief.

110.   Plaintiff's claims are typical of the claims of the other members of the Class and the NY Subclass, as all members of the respective classes are similarly affected by Defendants' wrongful conduct.  Plaintiff has no interests antagonistic to the interests of the other members of the Class and NY Subclass.  Plaintiff and all members of the Class and NY Subclass have sustained economic injury arising out of Defendants' violations of common and statutory law as alleged herein.

111.   Plaintiff is an adequate representative of the Class and the NY Subclass because her interests do not conflict with the interests of the class members she seeks to represent, she has retained counsel competent and experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of Class and the NY Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

112.   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Plaintiff and the members of the Class and NY Subclass. Each individual member of the respective classes may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability. Individualized litigation increases the delay and expense to all parties and

multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.   Individualized litigation also presents a potential for inconsistent or contradictory judgments.   In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## FIRST CAUSE OF ACTION
### (Violation of Section 349 of the New York General Business Law)

113.   Plaintiff repeats the allegations contained in the above paragraphs as if fully set forth herein.

114.   Plaintiff brings this cause of action individually and on behalf of the other members of the NY Subclass.

115.   Defendants misrepresented to Plaintiff and the other NY Subclass members that the ANR Products can, among other things, "repair past DNA damage"; "neutralize up to 90% of environmentally generated free radicals before they can affect the skin's appearance"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; "visibly reduce lines and wrinkles by 68%" and provide the other promised age-negating results as described herein.

46

116.    Defendants also failed to disclose material facts regarding the efficacy of the ANR Products and the purported supporting scientific references and clinical tests as described herein.

117.    Defendants' misrepresentations and omissions constitute an unconscionable commercial practice, deception, fraud, false promise, misrepresentation and/or the knowing concealment, suppression, or omissions in connection with  the sale or advertisement of merchandise, in violation of § 349 of New York's General Business Law, which makes deceptive acts and practices illegal.

118.    Plaintiff and the other members of the NY Subclass suffered an ascertainable loss directly, foreseeably and proximately caused by Defendants' misrepresentations and/or omissions because they were induced to purchase or paid a price premium due to the advertising, marketing, packaging, labeling and other promotion of ANR Products in reliance on Defendants' false and misleading statements, including omissions.  Because of Defendants' misrepresentations and/or omissions, Plaintiff and the other members of the NY Subclass did not receive the benefits they believed they had purchased

119.    Plaintiff and the other members of the NY Subclass suffered economic injury that is a direct result of Defendants' misrepresentations and omissions and they seek to put an end to Defendants' deceptive marketing of the ANR Products and to provide Plaintiff and the other members of the NY subclass with monetary relief for Defendants' deceptive conduct.

120.    Plaintiff and the other members of the NY Subclass also seek statutory damages, costs, and attorneys' fees.

**SECOND CAUSE OF ACTION**
**(Violation of Section 350 of the New York General Business Law)**

121.    Plaintiff repeats the allegations contained in the above paragraphs 1-112 as if fully set forth herein.

122.    Plaintiff brings this cause of action individually and on behalf of the other members of the NY Subclass.

123.    Defendants materially misled Plaintiff and the other members of the NY Subclass through their specific promises that, among other things, the ANR Products can, "repair past visible DNA damage"; "neutralize up to 90% of environmentally generated free radicals before they can affect skin's appearance"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; visibly "reduce lines and wrinkles by 68%" and provide the other promised age-negating results as described herein

124.    Defendants also failed to disclose material facts regarding the true nature of the ANR Products, including the efficacy of the ANR products and the purported supporting scientific references and clinical tests, as described herein.

125.    Defendants' misleading actions are consumer-oriented conduct and constitute false advertising in violation of § 350 of New York's General Business Law, which makes false advertising illegal.

48

126.    Plaintiff and the other members of the NY Subclass suffered injury as a result of Defendants' false advertising because they were induced to purchase or paid a price premium due to the misleading advertising, marketing, packaging, labeling and other promotion of ANR Products in reliance on Defendants' false and misleading statements, including omissions.    Because of Defendants' false advertising, Plaintiff and the other members of the NY Subclass did not receive the benefits they believed they had purchased.

### THIRD CAUSE OF ACTION
**(Breach of Contract)**

127.    Plaintiff repeats the allegations contained in paragraphs 1-112 as if fully set forth herein.

128.    Plaintiff brings this cause of action individually and on behalf the other members of the national Class, and the other members of the NY Subclass.

129.    Plaintiff, and each of the other members of the Class and NY Subclass, formed a contract with Defendants each time that Defendants sold them the ANR Products.  The terms of that contract include the efficacy promises and affirmations of fact that the ANR Products would, among other things, "repair past visible DNA damage"; "neutralize up to 90% of environmentally generated free radicals before they can affect skin's appearance"; "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; visibly "reduce lines and wrinkles by 68%" and  provide the other promised age-negating results as

49

described herein made by Defendants on the packaging and in the marketing materials for the ANR Products, as described above.  The packaging and marketing and advertising materials for the ANR Products are a part of a standardized contract between Plaintiff and the other Class and NY Subclass members on the one hand, and Defendants on the other.

130.   Defendants breached the terms of these contracts with Plaintiff and the other members of the Class and NY Subclass by failing to provide ANR Products which, among other things, "repair past visible DNA damage"; "neutralize up to 90% of environmentally generated free radicals before they can affect skin's appearance";  "support the natural synchronization of skin's repair and protection processes"; "repair the appearance of past damage"; "address the visible damaging effects of environmental assaults—UV light, smoke and pollution—before they become permanent"; "prevent future damage"; visibly "reduce lines and wrinkles by 68%" and provide the other promised age-negating results as described herein.

131.   As a result of Defendants' breach of contract, Plaintiff and the other members of the Class and NY Subclass were harmed in the amount of the purchase price they paid for the ANR Products.

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.     For an order certifying the Class and the NY Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiff as Class and NY Subclass

Representative, and her attorneys as Class Counsel to represent the Class and NY Subclass members;

B.     For an order declaring that Defendants' conduct violates the statutes referenced herein;

C.     For an order finding in favor of the Plaintiff and the other members of the Class and the NY Subclass on all counts asserted herein;

D.     For an order awarding compensatory, statutory, treble, and punitive damages in amounts to be determined by the Court and/or jury;

E.     For prejudgment interest on all amounts awarded;

F.     For an order of restitution and all other forms of equitable monetary relief; and

G.     For an order awarding Plaintiff and the other members of the Class and NY Subclass their reasonable attorneys' fees and expenses and costs of suit.

<div style="margin-left: 50%;">

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By: /s/ *Caroline F. Bartlett*
     CAROLINE F. BARTLETT
     James E. Cecchi
     Zachary S. Bower
     CARELLA, BYRNE, CECCHI,
     OLSTEIN, BRODY & AGNELLO, P.C.
     5 Becker Farm Road
     Roseland, New Jersey 07068
     (973) 994-1700

</div>

Dated:  September 24, 2014

Of Counsel:

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER P.A.
485 Lexington Avenue
New York, New York  10017
(646) 722-8500

Adam J. Levitt
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
(312) 214-0000

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims so triable.

<div style="margin-left: 40%;">

CARELLA, BYRNE, CECCHI,
OLSTEIN, BRODY & AGNELLO
Attorneys for Plaintiff


By:   /s/ Caroline F. Bartlett
    CAROLINE F. BARTLETT
    James E. Cecchi
    Zachary S. Bower
    CARELLA, BYRNE, CECCHI,
    OLSTEIN, BRODY & AGNELLO, P.C.
    5 Becker Farm Road
    Roseland, New Jersey 07068
    (973) 994-1700

</div>

Dated:  September 24, 2014

Of Counsel:

Jay W. Eisenhofer
Robert G. Eisler
GRANT & EISENHOFER P.A.
123 Justison Street
Wilmington, Delaware 19801
(302) 622-7000

Adam J. Levitt
GRANT & EISENHOFER P.A.
30 North LaSalle Street, Suite 1200
Chicago, Illinois  60602
(312) 214-0000

*Attorneys for Plaintiff*