UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

<u>**NOT FOR PUBLICATION**</u>

DONNA TOMASINO,

Plaintiff,

– against –

<u>**MEMORANDUM & ORDER**</u>

THE ESTEE LAUDER COMPANIES, INC.,
ESTEE LAUDER, LLC, and ESTEE LAUDER,
INC.,

13-CV-4692 (ERK) (RML)

Defendants.

KORMAN, J.:

I assume familiarity with the underlying facts of this case from my previous rulings on this matter. *See Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251 (E.D.N.Y. 2014) ("*Tomasino I*"); *Tomasino v. Estee Lauder Cos.*, No. 13-CV-4692, 2015 WL 1470177 (E.D.N.Y. Mar. 31, 2015) ("*Tomasino II*"). Briefly, plaintiff Donna Tomasino, on behalf of herself and all others similarly situated, brought a suit in diversity alleging that The Estee Lauder Companies Inc., Estee Laboratories, LLC, and Estee Lauder Inc. (collectively "Estee Lauder") advertise their Advanced Night Repair ("ANR") collection in a false, deceptive, or misleading way. 2d Am. Compl. ¶ 2, ECF No. 21. Specifically, she alleges that the ANR products "do not and cannot live up to" the advertised promise to "repair past visible DNA damage" as a means of making skin look younger. *Id.* at ¶¶ 8, 27.

In *Tomasino I*, I dismissed with prejudice Tomasino's claims for breach of express warranty, breach of implied warranty, and unjust enrichment. *Tomasino I*, 44 F. Supp. 3d 251. I also dismissed Tomasino's claims brought under sections 349 and 350 of the New York General Business Law without prejudice and allowed her the opportunity to replead. *Id.* Of particular relevance here, I dismissed the breach of warranty claims because Tomasino had not provided

reasonably timely notice of the breach to the defendants as required by N.Y. U.C.C. § 2-607(3)(a). *Id.* at 260–63. Specifically, that provision requires that after tender of goods has been accepted, "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." N.Y. U.C.C. § 2-607(3)(a). I ruled that the 30 months Tomasino allowed to pass from the time of her purchase until she first notified Estee Lauder of a problem was unreasonable as matter of law. *Tomasino I*, 44 F. Supp. 3d at 260–63.

Tomasino subsequently filed a Second Amended Complaint, repleading her General Business Law claims and asserting an additional claim for breach of contract. 2d Am. Compl. Estee Lauder again moved to dismiss the complaint, this time asserting that the breach of contract claim was barred by res judicata and law of the case and that Tomasino's pleadings did not make her General Business Law claims sufficiently plausible to withstand a motion to dismiss. That motion was denied on both grounds. *Tomasino II*, 2015 WL 1470177.

Estee Lauder has once again filed a motion to dismiss—this time under Fed. R. Civ. P. 12(c)—arguing that the breach of contract cause of action should be dismissed for failure to provide the defendants with timely notice as required by N.Y. U.C.C. § 2-607(3)(a).

## STANDARD OF REVIEW

Parties may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim." *Hogan v. Fischer*, 738 F.3d 509, 514-15 (2d Cir. 2013). To survive a defendant's 12(c) attack, a plaintiff's "complaint must contain sufficient factual matters to state a claim to relief that is plausible on its face." *Kirkendall v. Halliburton*, 707 F.3d 173, 178–79 (2d Cir. 2013). When adjudicating 12(c) motions, courts accept the complaint's factual

allegations and draw all reasonable inferences in the plaintiff's favor. *Id.* at 178. A court must assess whether the complaint "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

That defendants previously filed a motion to dismiss for failure to state a claim under Rule 12(b)(6) does not preclude them from bringing a second motion directed against the same complaint under Rule 12(c). *Biro v. Conde Nast*, 963 F. Supp. 2d 255, 266 n.2 (S.D.N.Y. 2013) ("[I]t is generally permitted by Rule 12(h)(2) to bring successive motions challenging the sufficiency of a claim, the first under 12(b)(6) and the second, after the Answer has been filed, under Rule 12(c)."); *Palmer v. N.Y. State Office of Court Admin.*, No. 5:00-CV-00110, 2007 WL 2362360, at *4 (N.D.N.Y. Aug. 13, 2007) *("District courts in the Second Circuit have held that successive motions to dismiss for failure to state a claim are not precluded by 12(h)(2)—that is, failure to raise a particular defense in a motion to dismiss does not preclude a party from bringing that defense in a 12(c) motion."); Wright & Miller, *Federal Practice and Procedure: Jurisdiction* 3d § 1385 at page 483 ("[E]ven though a Rule 12(b) motion has been made and a second Rule 12(b) motion is not permitted, the three defenses listed in Rule 12(h)(2) may be raised on a motion under Rule 12(c) for judgment on the pleadings . . . ."). Indeed, Tomasino does not contest that the motion here may be appropriately considered notwithstanding defendants' previous motion to dismiss under Rule 12(b)(6).

## ANALYSIS

### A.     Law of the Case

As an initial matter, this motion could be decided entirely under the law of the case doctrine.  That doctrine provides that a court should adhere to its earlier decisions in subsequent stages of litigation unless compelling reasons counsel otherwise.  *United States v. Quintieri*, 306 F.3d 1217, 1225 (2d Cir. 2002).  "The major grounds justifying reconsideration are an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992).  The doctrine is "driven by considerations of fairness to the parties, judicial economy, and the societal interest in finality."  *United States v. Carr*, 557 F.3d 93, 102 (2d Cir. 2009).

The timeliness of Tomasino's notice to defendants under N.Y. U.C.C. § 2-607(3)(a) was decided in favor of Estee Lauder in *Tomasino I*, 44 F. Supp. 3d at 260–63.  Indeed, her arguments in this motion are little more than expansions of those already raised and rejected in that first motion.  *See* Pl.'s Opp'n Mot. Dismiss at 21–22, ECF No. 14.  Notably, while Tomasino once again argues that the notice requirement does not apply under the specific facts of her case, she does not dispute that § 2-607(3)(a)'s requirement applies generally to breach of contract claims.  Nor does she show that there has been an intervening change in controlling law, that new evidence has become available, or that the previous decision represented clear error leading to manifest injustice.  As such, the law of the case doctrine counsels in favor of finding that Tomasino failed to provide timely notice under New York's Uniform Commercial Code.  Thus, her breach of contract claim could be dismissed for failure to provide notice solely on law of the case grounds.  Nevertheless, I address the merits of her arguments.

**B.     Merits**

*1.     Notice Requirement Applies to Retail Consumers*

While Tomasino implicitly admits that she is a buyer who accepted a tender of goods as required to trigger § 2-607(3), she nonetheless argues that the New York Uniform Commercial Code's notice requirement applies only to merchants and not to retail consumers.  Pl.'s Opp'n Mot. Dismiss at 5–6, ECF No. 63.  She does not, however, convincingly distinguish her case from the authorities indicating that the notice requirement applies to retail consumers.  *See, e.g.*, *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013) (dismissing claims by retail consumers for failure to comply with the notice requirement); *Hubbard v. Gen. Motors Corp.*, No. 95 Civ. 4362, 1996 WL 274018 (S.D.N.Y. May 22, 1996) (same).  The holdings in these cases are buttressed by the official commentary that accompanies § 2-607(3)(a), which Tomasino cites in her brief, albeit for a different point, and which plainly contemplates the applicability of the notice requirement to retail consumers.  Specifically, the commentary provides that,

> The time of notification is to be determined by applying commercial standards to a merchant buyer. "A reasonable time" for *notification from a retail consumer* is to be judged by different standards so that in his case it will be extended, for the rule of requiring notification is designed to defeat commercial bad faith, not to deprive a good faith consumer of his remedy.

N.Y. U.C.C. § 2-607 cmt. 4 (emphasis added).[1]  As one scholar has observed:

> Comment 4 reflects the view that the consumer quite often will take longer to appreciate the nature of a breach and to realize the seller may be liable for it. Nevertheless, if a consumer has not notified a seller of a breach for an unreasonable period of time, then the notice should be considered untimely. To hold otherwise

---

[1] While the official comments to the Uniform Commercial Code "do not have the force of law, [they] are nonetheless the most useful of several aids to interpretation and construction of the UCC."  *JOM, Inc. v. Adell Plastics, Inc.*, 193 F.3d 47, 57 n.6 (1st Cir. 1999) (internal quotation omitted); *see also McCarthy v. BMW Bank of N.A.*, 509 F.3d 528, 530 n.3 (D.C. Cir. 2007); *Guardian Life Ins. Co. of Am. v. Weisman*, 223 F.3d 229, 231 (3d Cir. 2000).  This usefulness is reflected in the myriad New York cases relying on the official commentary to interpret the U.C.C.  *See, e.g.*, *Highland Capital Mgmt. LP v. Schneider*, 866 N.E.2d 1020, 1028 (N.Y. 2007); *Getty Petroleum Corp. v. Am. Express Travel Related Servs. Co.*, 683 N.E.2d 311, 314 (N.Y. 1997).

would effectively read into section 2-607(3)(a) an unwarranted exception for consumers.

Harry G. Prince, *Overprotecting the Consumer? Section 2-607(3)(a) Notice of Breach in Nonprivity Contexts*, 66 N.C. L. Rev. 107, 126–27 (1987).  Indeed, the statement extending time for retail consumers would be nonsensical if those consumers were excused from the notice requirement altogether.

Moreover, as a matter of policy, the notice requirement serves several important functions that apply with equal force to merchant and consumer purchasers.  These include, among others, allowing for negotiation of a non-judicial settlement and protecting against stale claims.   Prince, *Overprotecting the Consumer? Section 2-607(3)(a) Notice of Breach in Nonprivity Contexts*, 66 N.C. L. Rev. at 115–16; *see also Brookings Mun. Utils., Inc. v. Amoco Chem. Co.*, 103 F. Supp. 2d 1169, 1175–76 (D.S.D. 2000) ("The purpose [of] the notice requirement is to: (1) give the seller sufficient time to investigate the breach of warranty claim while the facts are still fresh; (2) foster settlement through negotiation; (3) allow the seller to avoid future defects; (4) allow the seller to minimize damages; and (5) protect the seller from stale claims."); *P&F Constr. Corp. v. Friend Lumber Corp. of Medford*, 575 N.E.2d 57, 63 (Mass. App. Ct. 1991) ("A principal purpose underlying the obligation imposed by § 2-607(3)(a), to make a seller aware within a reasonable time that its goods do not conform, is to prepare the ground for working out a commercial dispute through compromise.").  There is no compelling policy reason to excuse retail consumers from the notice requirement, particularly in light of the extended time to provide notice that courts are directed by Comment 4 to give such consumers.

To be sure, Tomasino is correct that there is a line of New York cases that seems to create an exception to the notice requirement for retail customers.  *See Neri v. R.J. Reynolds Tobacco Co.*, No. 98-CV-371, 2000 WL 33911224, at *19 (N.D.N.Y. Sept. 28, 2000); *Fischer v.*

*Mead Johnson Labs.*, 41 A.D.2d 737, 737 (N.Y. App. Div. 1973); *Silverstein v. R.H. Macy & Co.*, 266 A.D. 5, 9 (N.Y. App. Div. 1943); *Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648, 649 (N.Y. App. Div. 1923).   In *Tomasino I*, I explained that the exception does not apply to the present case, however, because the exception has been applied in cases involving products for human consumption, particularly those that are edible.  *Tomasino I*, 44 F. Supp. 3d at 262 n.7. Tomasino disagrees with this characterization, writing that she is "unaware of any other New York court limiting [the notice exception] in that manner."  Pl.'s Opp'n Mot. Dismiss at 6. Nevertheless, she does not cite to any analogous cases—in New York or elsewhere—to indicate that her case falls within the notice exception as it has been applied in New York.  Indeed, even in the Northern District of New York's opinion in *Neri v. R.J. Reynolds Tobacco Co.*, 2000 WL 33911224—the only case on which Tomasino relies for this point in her briefing—the products in question were cigarettes, which fall within the category of orally consumable products.  The cosmetic products at issue here do not fall within that category and, thus, the exception does not apply here.

Moreover, there is another ground for distinguishing the present facts from the line of cases on which Tomasino relies.  Those cases all apply the rule announced in *Kennedy v. F.W. Woolworth Co.*, 205 A.D. 648 (N.Y. App. Div. 1923).  There, interpreting section 130 of New York's Personal Property Law,[2] the Appellate Division wrote that,

> The notice [requirement] has no relation to goods for immediate human consumption [because] [t]hat section apparently has to do with the sales of goods whose inspection or use discloses a defect of quality, lack of conformance to sample, failure to comply with description, or other cognate circumstances, which causes money damage to the vendee. To require a complaint which, *whatever its nomenclature of form, is really grounded on tortious elements*, to indicate a notice of rejection or claim of damage within a reasonable time on account of defect of edible goods in a retail

---

[2] Section 130 has been described as "the predicate for section 2-607 of the Uniform Commercial Code." *Fischer v. Mead Johnson Labs.*, 41 A.D.2d 737, 737 (N.Y. App. Div. 1973)

transaction, would strain the rule beyond a breaking point of sense
or proportion to its intended object.

*Id.* at 649 (emphasis added).  In other words, regardless of the stated theory of recovery, there is

no purpose in imposing a requirement relating to contracts on cases that essentially sound in tort

law.  Indeed, every case of which I am aware in which courts implementing New York law

declined to apply the notice requirement to a breach of contract claim amounted to a tort claim in

which the plaintiff suffered some personal injury.  *Neri*, 2000 WL 33911224 (suing cigarette

manufacturer for husband's death from emphysema); *Fischer*, 41 A.D.2d 737 (suing

manufacturer of oral contraceptive after plaintiff developed "a blood spot in her left eye");

*Silverstein*, 266 A.D. 5 (suing retailer for personal injuries received when gymnastic device

purchased from retailer gave way and plaintiff fell); *Kennedy*, 205 A.D. 648 (suing retailer after

plaintiff's daughter was injured as a result of eating candy purchased from retailer); *cf. Hobbs v.

Gen. Motors Corp.*, 134 F. Supp. 2d 1277, 1284 (M.D. Ala. 2001) ("The [Alabama Supreme

Court] reasoned that [the policies supporting the notice requirement] did not require notice in a

situation of personal injury where notice is inconsequential in preventing or mitigating the harm

since the injury has already occurred.").  In the present case, and unlike the plaintiffs above,

Tomasino asserts no injury to her person.  Her alleged damages are entirely monetary and sound

only in contract law.  Because her claims are not grounded on tortious elements, but instead

focused solely on contractual issues, there is no reason to excuse her from the procedural

requirements of § 2-607(3)(a).

2.      *Timeliness Can Be Decided as a Matter of Law*

Tomasino next argues that, even if the notice requirement does apply to her as a retail

consumer, the determination of timeliness is a question of fact to be decided by a jury.  Pl.'s

Opp'n Mot. Dismiss at 7–8.  This argument fails.  "Although reasonableness of a delay is

normally a question of fact for a jury, courts have found some delays unreasonable as a matter of

law." *Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc.*, No. 03-CV-4892 (JFB) (MLO), 2006 WL 2654827, at *9 (E.D.N.Y. Sept. 15, 2006).   As discussed more fully below, the 30-month delay in notice here falls well within the range of timeliness that courts may deem unreasonable as a matter of law.   *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 544 (S.D.N.Y. 2013) (timely notice not given where plaintiffs filed suit in the year following their purchase of a dietary supplement); *Niagara Transformer Corp. v. Baldwin Tech., Inc.*, No. No. DKC 11–3415, 2013 WL 2919705, at *9 (D. Md. June 12, 2013) (applying New York law to find five-year delay between acceptance and notice to be unreasonable as a matter of law); *Sara Corp. v. Sainty Int'l Am. Inc.*, No. 05 Civ. 2944, 2008 WL 2944862, at *7–8 (S.D.N.Y. Aug. 1, 2008) (delay of nine months after late delivery was "plainly unreasonable"); *Cafaro v. Emergency Servs. Holding, Inc.*, 11 A.D.3d 496, 499 (N.Y. App. Div. 2004) (16-month delay untimely as a matter of law); *Mt. Vernon Mills, Inc. v. Murphy Textile Mills*, 148 A.D.2d 389, 390 (N.Y. App. Div. 1989) (seven-month delay untimely as a matter of law).   Tomasino argues that none of these cases involved retail consumers, but offers no explanation for why that distinction matters.   It is unclear why a court would be capable of making a legal determination regarding reasonable timeliness as applied to merchants but not for retail consumers, even given the relaxed standard that may apply to those consumers.   Courts have the power to dismiss contract claims under § 2-607(3)(a) where the plaintiff has failed as a matter of law to provide the seller with reasonable notice of the breach.

> 3.   *Tomasino Did Not Give Estee Lauder Timely Notice of the Alleged Breach*

Tomasino next argues that, assuming timely notice is required, she provided it to Estee Lauder in the form of a letter she sent on July 3, 2013. Pl.'s Opp'n Mot. Dismiss at 14.   First, there is reason to doubt that the letter constituted proper notice because it failed to state which products Tomasino purchased or indicate whether she used any of the products.   *See* Bartlett

Decl. Ex. C, ECF No. 15.  Even assuming the letter did constitute proper notice, and further taking into account that the notice requirement for retail consumers is judged by a relaxed standard compared to merchants, the notice Tomasino provided was not reasonably timely as required under New York law.

Tomasino did not send her letter to Estee Lauder until 30 months after she purchased the ANR Products and she has offered no explanation as to the cause of this delay.  As I wrote in *Tomasino I*, assuming she did not use the products for six months after purchasing them and then allowing a year—the length of the studies cited in the Second Amended Complaint—to gauge the product's effectiveness, there was still another full year during which Tomasino could have, but did not, notify Estee Lauder of the alleged breach.  Particularly where the product at issue is widely produced and distributed for immediate use, this delay exceeds the bounds of reasonable timeliness.  *See Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013).

While Tomasino cites a few cases in which extended delays in notice by retail consumers were deemed reasonable, Pl.'s Opp'n Mot. Dismiss at 14–15, none of those cases applied New York law and none involved a 30-month delay, as was the case here.  Moreover, the cases present distinguishable facts from the present dispute.  For instance, in *Fitl v. Strek*, 690 N.W.2d 605 (Neb. 2005), the court upheld the trial judge's determination that a two-year delay in notification from the time of purchase was not clearly erroneous where the customer notified the seller of the defect once it was discovered.  Here, in contrast, notice was not promptly given, even when Tomasino presumably knew the product had not worked as she expected it to.  The most analogous case to the present facts is *Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533 (S.D.N.Y. 2013), in which consumers who purchased dietary supplements that claimed to rebuild cartilage brought a putative class action against the retail distributor alleging a variety of contract and customer protection claims.  There, the court found that timely notice was not given where

the consumer plaintiffs filed suit in the year following their purchase of a dietary supplement. *Id.*
at 544. Tomasino attempts to distinguish her case by arguing that the *Quinn* plaintiffs failed to
provide any notice at all, Pl.'s Opp'n Mot. Dismiss at 8 n.9, but this overlooks the line of New
York cases suggesting that filing suit may itself constitute notice, *see Tomasino I*, 44 F. Supp. 3d
at 261 n.6. As the one-year delay in *Quinn* was not reasonably timely under § 2-607(3)(a), the
30-month delay here is similarly unreasonable as a matter of law. Accordingly, Tomasino's
breach of contract claim is dismissed for failure to provide notice of the alleged breach within a
reasonable time.

## C.     Leave to Replead Unjust Enrichment Claim

Tomasino asks that she be given leave to replead her unjust enrichment claim if her
breach of contract claim is dismissed. That claim had previously been dismissed with prejudice
because the existence of an express contract—which neither party disputes was present here—
precludes recovery under the equitable theory of unjust enrichment. *See IDT Corp. v. Morgan
Stanley Dean Witter & Co.*, 907 N.E.2d 268, 274 (N.Y. 2009); *Mid-Hudson Catskill Rural
Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005); *Clark-Fitzpatrick,
Inc. v. Long Island R. Co.*, 516 N.E.2d 190, 193 (N.Y. 1987). Tomasino argues that this decision
was in error, but cites to no New York authority in support of her argument. Indeed, the New
York cases on which she relies only apply to instances in which "there is a *bona fide* dispute as
to the existence of a contract or where the contract does not cover the dispute in issue." Pl.'s
Opp'n Mot. Dismiss at 19 (quoting *Antares Mgt. LLC v. Galt Global Capital, Inc.*, No. 12-CV-
6075, 2013 WL 1209799, at *12 (S.D.N.Y. Mar. 22, 2013); *Accurate Grading Quality
Assurance, Inc. v. Kothari*, No. 12CV9130, 2014 WL 5073576, at *15 (S.D.N.Y. Sept. 30,
2014)). There is no bona fide dispute here regarding the existence of a contract—only whether
Tomasino has properly asserted her legal rights under that contract—and so this line of cases is

11

inapplicable.  I see no reason to rescind my earlier dismissal of Tomasino's unjust enrichment claim with prejudice.

### CONCLUSION

Defendants' motion to dismiss Tomasino's breach of contract claim is granted and the claim is dismissed with prejudice.  Defendants previously argued that dismissal of the breach of contract claims would deprive the court of subject matter jurisdiction over this case because the only surviving claims arise under New York's General Business Law which can arguably only be asserted by New York residents.  If correct, this would defeat the minimal diversity needed to maintain a class action in federal court.  I declined to reach the issue previously because the breach of contract claim survived defendants' first attempt at dismissing it.  *Tomasino II*, 2015 WL 1470177, at \*3.  Now that the claim has been dismissed, the issue is ripe for review.  The parties are directed to submit memoranda addressing this issue via ECF by August 24, 2015.

**SO ORDERED.**

Brooklyn, New York
August 7, 2015

*Edward R. Korman*
Edward R. Korman
Senior United States District Judge

12